EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Las Marías Reference Laboratory Corp.<br><br>Demandante-Recurrido<br><br>v.<br><br>Municipio de San Juan<br><br>Demandado-Peticionario | Certiorari<br><br>2003 TSPR 121<br><br>159 DPR \_\_\_\_ |

Número del Caso: CC-2002-725

Fecha: 15 de julio de 2003

Tribunal de Circuito de Apelaciones:
                    Circuito Regional I

Juez Ponente:
                    Hon. Dolores Rodríguez de Oronoz

Abogados de la Parte Peticionaria:
                    Lcdo. Iván Castro Ortiz
                    Lcdo. Simone Cataldi Malpica

Abogado de la Parte Recurrida:
                    Lcdo. Orlando Fernández

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Las Marías Reference Laboratory
Corp.

    Demandante-Recurrido

       v.                   CC-2002-725      Certiorari

Municipio de San Juan

    Demandado-Peticionario

Opinión de Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico a 15 de julio de 2003.

Nos corresponde resolver si la no remisión de un contrato municipal a la Oficina del Contralor, según lo requiere la Ley de Municipios Autónomos, hace de éste uno ineficaz e inexigible.

Por entender que el cumplimiento con dicho requisito es un elemento constitutivo de todo contrato municipal, resolvemos en la afirmativa.

I

Las Marías Reference Laboratory Corp. (en adelante, "Las Marías") presentó una demanda en cobro de dinero contra el Municipio de San Juan (en adelante, "el Municipio") por la cantidad

de $510,659.80.[1]  Mediante dicho reclamo, Las Marías adujo que la referida deuda surgía de un contrato que había suscrito con el Municipio, en el que ésta proveería servicios de laboratorio clínico a residentes indigentes de San Juan.[2]  Los alegados servicios se prestaron durante varios períodos entre el 1 de agosto de 1994 y el 30 de junio de 1997.

Posteriormente, las partes presentaron ante el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI") una *Estipulación de Sentencia Parcial*, mediante la cual acordaron que el Municipio satisfaría la cantidad de $244,544.50 en pago parcial de lo adeudado.[3]  Conforme a ello, el TPI procedió a dictar sentencia parcial por la cantidad estipulada, y ordenó la continuación de los procedimientos en relación al balance de la cantidad reclamada.

Tras ese suceso, el Municipio presentó su contestación a la demanda.[4]  En esencia, alegó que los contratos suscritos originalmente por las partes no están en controversia.  Sin embargo, objetó pagar las deudas resultantes de servicios que, vencidos los convenios

---

[1] La demanda se presentó el 28 de agosto de 1997. *Véase* Apéndice, a la pág. 1.

[2] Los servicios se prestaban a los pacientes de programas como "SIDA de San Juan" y "Salud Mental", así como otros adscritos al Departamento de Salud de la Capital. *Véase Petición de Certiorari*, a la pág. 3.

[3] La estipulación se presentó el 29 de agosto de 1997. *Véase* Apéndice, a la pág. 716.

[4] La contestación se presentó el 3 de noviembre de 1997. *Véase* Apéndice, a la pág. 5.

originales, las partes acordaron mediante una serie de cartas.

Así las cosas, Las Marías presentó una moción de sentencia sumaria reiterando las alegaciones esbozadas en su demanda. En apoyo a tal solicitud, acompañó una declaración jurada y otros documentos que acreditaban una deuda del Municipio ascendente a $165,679.61. Además, incluyó una relación de los hechos que entendía no estaban en controversia.

En desacuerdo, el Municipio presentó una moción en oposición a la petición de sentencia sumaria, y solicitó que se resolviera a su favor. A esos efectos, sometió un informe de auditoría preparado por la firma Figueras & Del Valle,[5] el cual plantea que no procede el pago de las facturas reclamadas en aquellos casos donde la extensión o renovación se hizo mediante cartas que no se registraron en la Oficina del Contralor, contrario a lo dispuesto por la Ley de Municipios Autónomos, 21 L.P.R.A. § 4001 *et seq.* A tenor con dicho informe, el Municipio alegó que la cuantía correspondiente a las facturas legítimas que proceden ser pagadas, por estar sustentadas debidamente por contrato escrito y registrado en la

---

[5] El estudio realizado por la referida firma contó con el aval de Las Marías. *Véase* Alegato de la Recurrida, a la pág. 2. En el mismo, Figueras & Del Valle estudió la totalidad de las facturas remitidas por Las Marías al Municipio, así como los contratos, sus registros a la Oficina del Contralor y documentos relacionados al proceso de adjudicación de la subasta del servicio de pruebas de laboratorio para varias facilidades de salud del Municipio. *Véase* Petición de Certiorari, a la pág. 4.

Oficina del Contralor, asciende a la cantidad de $42,755.80.

Luego de varios trámites procesales, el TPI emitió sentencia a favor de Las Marías el 17 de enero de 2001, la cual fue notificada el 31 de enero de ese año. Mediante la misma, dicho foro concluyó que los contratos, extensiones y enmiendas existentes entre las partes eran contratos válidos y conforme a la ley, la moral y el orden público. Asimismo, sostuvo que el hecho de que el Municipio incumpliera su obligación de remitir copia de algunos de los contratos a la Oficina del Contralor, no viciaba de nulidad los acuerdos suscritos.

El Municipio recurrió de esta decisión al Tribunal de Circuito de Apelaciones (en adelante, "TCA"). Mediante sentencia de 23 de mayo de 2003,[6] el TCA resolvió que no existía controversia sobre la validez de los contratos, y que no se podía penalizar a Las Marías por la omisión del Municipio en presentarlos a la Oficina del Contralor.

Inconforme, el Municipio presentó un recurso de *certiorari* ante este Tribunal, en el cual planteó que:

> **[e]rró el Honorable Tribunal de Circuito de Apelaciones al confirmar la sentencia dictada por el Tribunal de Primera Instancia ordenando el pago de las facturas sometidas por la parte recurrida, aun cuando no mediara un contrato escrito y registrado en la Oficina del Contralor.**

---

[6] La sentencia se notificó el 5 de junio de 2002. *Véase* Apéndice, a la pág. 673.

Expedimos el recurso mediante Resolución de 1 de noviembre de 2002. Perfeccionado el mismo, resolvemos.

II

El Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, 2 L.P.R.A. § 97, dispone que:

> [l]os departamentos, agencias, instrumentalidades, oficinas y todo otro organismo y **los municipios** del Estado Libre Asociado de Puerto Rico, **sin excepción alguna**, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y **deberán remitir copia de éstos a la Oficina del Contralor** dentro de los quince (15) días siguientes a la fecha del otorgamiento del contrato o la enmienda. (énfasis suplido).

Por su parte, el Art. 8.004 de la Ley de Municipios Autónomos de Puerto Rico, 21 L.P.R.A. § 4354 expresa en lo pertinente:

> ....
>
> [n]o se autorizará desembolso alguno relacionado con contratos sin la constancia de haberse enviado el contrato a la Oficina del Contralor de Puerto Rico, conforme a lo dispuesto en las secs. 97 et seq del Título 2 y su Reglamento.

Una lectura integral de ambas disposiciones de ley nos lleva inexorablemente a concluir que ningún Municipio podrá satisfacer deuda alguna que emane de un acuerdo que no se haya registrado y remitido a la Oficina del Contralor.[7] De hecho, al interpretar anteriormente estas

_____

[7] También hemos establecido que para que lo convenido entre la parte privada y el municipio sea vinculante, lo acordado tiene que formularse por escrito, sin excepción alguna. _Fernández & Gutiérrez v. Municipio_

disposiciones, expresamos que las mismas "reflejan la intención legislativa de crear un mecanismo de **cotejo y publicidad** de los contratos otorgados por los municipios,[8] *que tiene carácter constitutivo respecto a la eficacia de éstos*." *Fernández & Gutiérrez v. Municipio de San Juan*, 147 D.P.R. 824, 830 (1999)(énfasis suplido). Por ende, la inexigibilidad de los contratos municipales no remitidos al Contralor responde al hecho de que los mismos no se consideran legalmente perfeccionados. Es decir, todo pacto entre una parte privada y un municipio en que no se siga el trámite dispuesto por ley es nulo. *Hatton v. Municipio de Ponce*, 134 D.P.R. 1001, 1007 (1994). Este postulado opera indistintamente de si el contrato en cuestión es un acuerdo original, o una extensión o renovación. *Véase Fernández & Gutiérrez v. Municipio de San Juan*, *supra*, a la pág. 832.

La rigurosidad de estos preceptos responde al gran interés del Estado en promover una sana y recta administración pública, previniendo el despilfarro, la corrupción y el amiguismo en la contratación gubernamental. *Id.*, a la pág. 829; *Hatton v. Municipio*

---

*de San Juan,* 147 D.P.R. 824 (1999); *Hatton v. Municipio de Ponce*, 134 D.P.R. 1001 (1994).

[8] Los requisitos de registro y remisión de los contratos a la Oficina del Contralor van dirigidos a evitar los pagos y las reclamaciones fraudulentas o ilegales, mediante la creación de un mecanismo de cotejo que preserva cronológicamente las circunstancias de estos acuerdos. *Hatton v. Municipio de Ponce*, *supra*, a la pág. 1006.

*de Ponce*, *supra*, 1006; *Ocasio v. Alcalde de Maunabo*, 121 D.P.R 37, 54 (1988); *Morales v. Municipio de Toa Baja*, 119 D.P.R. 682, 693 (1987). A esos efectos, hemos expresado que "la buena administración de un gobierno es una virtud de democracia, y parte de su buena administración implica llevar a cabo sus funciones como comprador con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa." *Fernández & Gutiérrez v. Municipio de San Juan*, *supra*, a la pág. 829; *Mar-Mol Co., Inc. v. Administración de Servicios Generales*, 126 D.P.R. 864, 871 (1990).

Asimismo, hemos establecido palmariamente que **las referidas normas existen para "proteger al interés público y no a las partes contratantes**." *Hatton v. Municipio de Ponce*, *supra*, a la pág. 1011 (énfasis suplido). A tenor con dicho principio, se ha aplicado esta normativa de manera inflexible, presumiéndose que las partes que contratan con un municipio conocen de la necesidad de conducirse de acuerdo a estas especificaciones. *Id.* En consecuencia, hemos determinado la inaplicabilidad de **cualquier remedio en equidad, como por ejemplo, el enriquecimiento injusto**, a favor de alguna parte privada que contrate con un municipio y sufra daños por no adherirse a la normativa establecida. *Véase Fernández & Gutiérrez v. Municipio de San Juan*, *supra*, a la pág. 833; *Hatton v. Municipio de*

*Ponce, supra*, a la pág. 1010-1012.  Ello así toda vez que es doctrina reiterada que **dichos remedios no se aplicarán cuando resulte contrario a una clara política pública plasmada en un estatuto o en la Constitución**. *Véase Hatton v. Municipio de Ponce, supra*, a la pág. 1010; *Morales v. Municipio de Toa Baja, supra*, a las págs. 684-685.[9]

Finalmente, hemos enfatizado que el fiel cumplimiento con los referidos requisitos formales aplican aun cuando exista un "estado de emergencia real," debidamente proclamado por el Alcalde o por el Gobernador de Puerto Rico.  *Véase Hatton v. Municipio de Ponce, supra*, a las págs. 1005-1009.[10]  Ello responde al propósito de "evitar que los estados de emergencia— bien reales o ficticios— sean mal utilizados por funcionarios municipales y terceras personas." *Id.*, a la pág. 1008. Reiteramos dicho raciocinio en *Fernández & Gutiérrez v. Municipio de San Juan, supra*, a las págs. 829-831, donde explicamos que los requisitos formales de los contratos

---

[9] Al establecer este criterio, expresamos en *Hatton, supra*, a la pág. 1012, que "nos negamos a elevar a rango de *precedente judicial* actos efectuados contra las leyes que encarnan principios fundamentales de política pública y sana administración de fondos públicos.  De la manera más enérgica rechazamos esa pretención" (énfasis en el original).

[10] Discutimos en *Hatton, supra*, a las págs. 1005-1009, que en casos de emergencias reales, que exijan acción inmediata, el alcalde puede obviar llevar a cabo el procedimiento de subasta.  Sin embargo, establecimos que aun en dichos casos no se pueden soslayar las formalidades que gobiernan las relaciones contractuales entre entidades privadas y los municipios.

municipales no pueden descartarse "ni siquiera en casos de emergencia", ya que los mismos son esenciales "para prevenir el despilfarro, la corrupción y el amiguismo" en un tipo de negocio que "está revestido del más alto interés público."

Así pues, ante situaciones como la de autos, los tribunales deben estar vigilantes para evitar que se burlen disposiciones legales dirigidas a asegurar la más sana administración pública. *Hatton v. Municipio de Ponce*, *supra*, a la pág. 1001. Corresponde a los foros judiciales examinar dichas situaciones con suma cautela para asegurarse que se han cumplido cabalmente las normas establecidas para el desembolso de fondos públicos. *Ocasio v. Alcalde de Maunabo*, *supra*, a la pág. 54.

Conforme a este marco jurídico, analizamos la controversia ante nos.

### III

Surge de los alegatos de las partes que hubo una serie de contratos entre el Municipio y Las Marías que no se remitieron a la Oficina del Contralor, contrario a lo que claramente establece la ley. Las Marías, sin embargo, alega que ello no es óbice para la exigibilidad de dichos acuerdos, dado que "las obligaciones que contrae un municipio se rigen por principios de derecho civil y por la teoría general de los contratos," por lo que "la ausencia de una forma o formato específico" no

vicia de nulidad el acuerdo.[11]  Arguye también que "no era su responsabilidad el registrar los contratos en la Oficina del Contralor",[12] y que "ningún caso establece que el no registrar los contratos con el Contralor vicia la validez de los mismos."[13]  Finalmente, Las Marías apela a la equidad, destacando la supuesta situación excepcional en que se encontraba,[14] y explicando que sería injusto que el Municipio se beneficiara de su propio incumplimiento con la ley.  No tiene razón Las Marías.

Según explicáramos en la sección anterior, la política pública establecida en nuestro ordenamiento jurídico requiere que las relaciones contractuales entre entidades privadas y municipales se lleven a cabo conforme a las leyes pertinentes.  Así pues, como **elemento constitutivo** de todo contrato municipal, la ley requiere, *inter alia*, que éste se registre y que se remita copia del mismo a la Oficina del Contralor.  El incumplir con dicho mandato anula cualquier acuerdo entre las partes, ya que el lenguaje de la ley es claro al declarar que tal exigencia no admitirá "excepción alguna," además de que se supone que el contratante conocía, o debió conocer, sobre ese requisito.  *Fernández*

---

[11] *Véase* Alegato de la Recurrida, a las págs. 4-5.

[12] *Id.*, a la pág. 6.

[13] *Id.*

[14] Las Marías alega que "flaco servicio hubiese brindado si cuando le requerían procesar muestras de laboratorio se hubiese negado...porque no sabía ni tenía constancia de que el Municipio hubiese registrado los contratos y cartas con el Contralor." *Id.*

*& Gutiérrez v. Municipio de San Juan*, *supra*, a la pág. 830. Igualmente, en atención al sustancial interés público envuelto, hemos resuelto la inaplicabilidad de remedios en equidad para casos como el de autos. *Hatton v. Municipio de Ponce*, *supra*, a la pág. 1010-1012.

La presente situación es particularmente emblemática, ya que Las Marías había hecho negocios anteriormente con el Municipio, por lo que debía conocer la reglamentación vigente para este tipo de contratación. A pesar de ello, descansó en una serie de cartas para pretender renovar los contratos, sabiendo, o debiendo saber, que dichos documentos, sin más, eran **insuficientes** para crear obligaciones exigibles con el Municipio. *Véase Fernández & Gutiérrez v. Municipio de San Juan*, *supra*, a la pág. 14. Todo contratante privado debe conocer que, al hacer negocios con un municipio, los acuerdos alcanzados deben reducirse a un **contrato escrito**, que éste tiene que **registrarse**, y que copia del mismo tiene que **remitirse a la Oficina del Contralor** dentro de los quince (15) días siguientes a su otorgamiento.

Por tanto, Las Marías debió conducirse de manera más proactiva al contratar con el Municipio, debiendo verificar que éste cumplió con los requisitos mínimos para la exigibilidad de los servicios acordados. Al prestar servicios al Municipio sin constatar que los acuerdos se habían perfeccionado conforme a derecho, Las

Marías provocó su propio empobrecimiento. *Véase e.g. Hatton v. Municipio de Ponce*, supra, a la pág. 1011.

IV

No obstante lo anterior, nos preocupa la posibilidad de que algunos Municipios se escuden tras la rigurosa normativa en que se apoya la contratación municipal para aprovecharse de situaciones en que las partes privadas han confiado o presumido que éstos cumplirían con su responsabilidad ministerial. El objeto de nuestra preocupación incluye tanto aquellos casos en que el municipio no satisface su obligación por descuido o negligencia, como aquellos en que intencional y culposamente no se cumple con el trámite requerido para el debido perfeccionamiento del contrato. ***Entendemos que esa posibilidad lesiona el interés público***, no solo porque afecta el tráfico jurídico y comercial, sino porque también lacera la credibilidad del gobierno en los negocios. Esta incertidumbre, a su vez, termina afectando los servicios que se le deben al pueblo, ya que los proveedores serios y cotizados optarán, cuando menos, por limitar sus negocios con los municipios. Por ello, a continuación delineamos lo que consideramos una práctica deseable, al igual que otras parecidas, en casos de contratación municipal, de modo que se propicie el cumplimiento con lo dispuesto por la Ley de Municipios Autónomos.

Primeramente, los municipios no deben exigir la ejecución de servicios sin haber certificado a la parte privada que el acuerdo se redujo a un contrato escrito, que se registró, y que se remitió copia del mismo a la Oficina del Contralor según lo dispone la ley.[15] La referida certificación detallaría minuciosamente el trámite efectuado, especialmente lo pertinente a la remisión del contrato a la Oficina del Contralor, especificando, como mínimo, la fecha, hora y número de registro del mismo en esa oficina.[16] Este proceder debe observarse incluso en casos de emergencia.[17]

---

[15] Es decir, que se perfeccionó el contrato conforme a derecho, y que el mismo es exigible.

[16] Además del número de registro en la Oficina del Contralor, la certificación consignaría que el Director Ejecutivo del departamento municipal contratante le asignó a cada contrato otorgado el número correspondiente en el registro de contratos del municipio.

Igualmente, que los Asesores Legales del departamento otorgante revisaron el contrato y certificación departamental, determinando que los mismos cumplían con todas las leyes y reglamentos estatales y federales, y con las ordenanzas, ordenes ejecutivas, normas, cartas circulares, resoluciones y con cualquiera otros criterios y disposiciones que sean de aplicación, haciéndolo constar en el contrato y certificación departamental mediante su aprobación favorable.

[17] Este trámite deberá ejecutarse sujeto a lo dispuesto para casos de contratación de emergencia por la Ley de Municipios Autónomos, *supra*, y lo resuelto en el caso de *Hatton v. Municipio de Ponce*, *supra*, a la pág. 1005-1009, y su progenie. En *Hatton*, al discutir la aplicación de los requisitos legales de la contratación

continúa...

[17] ...continuación
municipal a casos atípicos, expresamos que, **dado el interés público que subyace estas normas, las mismas "no pueden descartarse, aun en situaciones meritorias que**

Asimismo, entendemos que las partes privadas deben ejercer un rol más activo al contratar con los municipios. **Toda vez que las entidades no gubernamentales que contratan con los municipios no están exentas del cumplimiento de la ley**, sería prudente que éstas exijan de los municipios la referida certificación antes de realizar alguna prestación. De este modo, aquella parte privada que se cruce de brazos y preste servicios sin exigir prueba fehaciente de que el gobierno cumplió con su deber, se arriesga a asumir la responsabilidad por sus pérdidas.

Por otro lado, creemos conveniente que todos los municipios aprueben reglamentación-- o modifiquen la que esté vigente-- a los fines de incorporar lo sugerido en esta opinión, o medidas similares, así como para establecer sistemas internos adecuados destinados a instaurar controles que aseguren el cumplimiento de la ley en todo tipo de contratación en la que sean parte.[18]

---

**exigen cierta flexibilidad, tales como la adquisición de bienes y servicios en casos de emergencia y otras situaciones excepcionales.**" *Id.*, a la pág. 1005 (énfasis suplido).

[18] La Ley de Municipios Autónomos también hace un llamado a esos efectos, al expresar en su Art. 8.010(d) que:

[l]os procedimientos para incurrir en gastos y pagarlos, para recibir y depositar fondos públicos municipales y para controlar y contabilizar la propiedad pública municipal **tendrán unos controles adecuados y**

continúa...

[18] ...continuación

**suficientes para impedir y dificultar que se cometan irregularidades.** Asimismo, que de éstas cometerse, se puedan descubrir y fijar responsabilidades, y que

Entendemos que el proceder de acuerdo a lo arriba delineado-- por parte del municipio y de la parte privada-- es recomendable para evitar que se sigan suscitando casos como el de autos. De este modo se logra una mayor transparencia en la administración pública, a la vez que se promueve la estabilidad, certeza y credibilidad en la contratación municipal. El beneficiario mayor es, por consiguiente, el interés público.

V

Por los fundamentos expuestos, resolvemos que son nulos todos aquellos acuerdos suscritos entre Las Marías y el Municipio en lo cuales no se cumplió con el requisito de remitir los mismos a la Oficina del Contralor. En consecuencia, el Municipio no desembolsará cantidad alguna de fondos públicos para satisfacer deudas que se deriven de tales pactos. Se revoca la sentencia del TCA y se devuelve el caso al TPI para que continúe los procedimientos conforme a lo aquí dispuesto.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

---

garanticen, además, la claridad y pureza en los procedimientos fiscales. 21 L.P.R.A. § 4360(d)(énfasis suplido).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Las Marías Reference Laboratory
Corp.

   Demandante Recurrido

                       CC-2002-725

      v.

Municipio de San Juan

   Demandado Peticionario

SENTENCIA

San Juan, Puerto Rico, a 15 de julio de 2003.

**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que son nulos todos aquellos acuerdos suscritos entre Las Marías y el Municipio en lo cuales no se cumplió con el requisito de remitir los mismos a la Oficina del Contralor. En consecuencia, el Municipio no desembolsará cantidad alguna de fondos públicos para satisfacer deudas que se deriven de tales pactos. Se revoca la Sentencia del Tribunal de Circuito de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos conforme a lo aquí dispuesto.**

Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre sin opinión escrita. El Juez Presidente señor Andréu García no interviene. El Juez Asociado señor Rivera Pérez no intervino.

Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo