# 2009 DTA 100

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

IM WINNER INC.
Apelante

v.

ADMINISTRACIÓN DE INSTITUCIONES JUVENILES, ET AL.
Apelados

Núm. KLAN-2009-00637

San Juan, Puerto Rico, a 7 de julio de 2009

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Cordero Vázquez y Cortés Trigo

Bajandas Vélez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos IM Winner Inc. (IM Winner o la apelante) mediante el recurso de epígrafe. Nos solicita que revoquemos la sentencia sumaria emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (el TPI) el 5 de febrero de 2009 y notificada el 13 de marzo de 2009. Por medio de dicho dictamen, el TPI desestimó con perjuicio la demanda de cobro de dinero incoada contra la Administración de Instituciones Juveniles (la AIJ o la apelada).

Analizado el recurso y el derecho aplicable, resolvemos confirmar la sentencia sumaria apelada.

### I

El 21 de febrero de 2001, IM Winner suscribió un contrato con la AIJ para proveer servicios de mantenimiento en siete instituciones juveniles, a saber: (1) Escuela Industrial de Jóvenes, Cabo Rojo; (2) Campamento Santana, Sabana Grande; (3) Centro de Tratamiento Social, Ponce; (4) Centro de Detención, Humacao; (5) Centro de Tratamiento Social, Guaynabo; (6) Hogar Grupo Independiente, Mayagüez; y (7) Hogar Grupo Gualí, Guaynabo (Contrato Núm. 2001-000074). Este contrato vencía el 30 de junio de 2001.

La cláusula 26 del Contrato Núm. 2001-000074 estableció:

"AMBAS PARTES acuerdan que no se prestará servicio alguno bajo este contrato hasta que sea firmado por ambas y no se continuará dando servicios bajo este contrato a partir de su fecha de expiración, excepto que anterior a dicha fecha, AMBAS hayan otorgado enmienda escrita extendiendo [sic] la vigencia del mismo. No se pagarán servicios prestados en violación a esta Cláusula. Cualquier funcionario empleado de la PRIMERA PARTE (la AIJ) que se [sic] solicite y/o acepte servicios de la SEGUNDA PARTE en violación a esta deposición lo está haciendo sin autorización legal alguna."

Apéndice de la apelante, pág. 29.

El 3 de mayo de 2001, la Junta de Subastas de la AIJ publicó la invitación para la Subasta Núm. 02-007 para la prestación de servicios de mantenimiento mediante brigadas en las instituciones de la AIJ. El acto de apertura de la subasta se celebró el 25 de mayo de 2001.

El 29 de junio de 2001, la AIJ e IM Winner suscribieron una enmienda al referido contrato en la cual extendieron su vigencia hasta el 31 de agosto de 2001. Con posterioridad a esta fecha, las partes no suscribieron enmienda a este contrato u otro contrato.

El 23 de agosto de 2001, la Junta de Subastas de la AIJ adjudicó la buena pro de la subasta a IM Winner a pesar de no ser el postor más bajo, debido a la experiencia de buen servicio que le había brindado a las instituciones. El Aviso de Adjudicación fue notificado el 28 de agosto de 2001, y el 4 de septiembre de 2001 fue enmendado para corregir el precio de dos renglones.

No obstante, el 17 de septiembre de 2001, Xpert's, Inc. solicitó la reconsideración de la adjudicación de la subasta ante la Junta de Reconsideración de Subastas del Departamento de Corrección y Rehabilitación (Junta de Reconsideración). La AIJ presentó su oposición, y la Junta de Reconsideración celebró una vista administrativa.

El 29 de diciembre de 2001, notificada ese mismo día, la Junta de Reconsideración emitió una resolución. Determinó que del expediente de la Subasta Núm. 02-007 no surgía la existencia y aplicación de criterios objetivos en los cuales descanse la evaluación de la calidad del servicio de cada uno de los licitadores. Razonó que esta ausencia de criterios perjudicó a los licitadores, con la excepción de IM Winner, quien era el único licitador que le había ofrecido servicios a la AIJ. Concluyó que la oferta de IM Winner adolecía de ambigüedad y

no fue responsiva. Consideró que la oferta de Xpert´s fue más baja, por lo que dejó sin efecto la adjudicación de la subasta a favor de IM Winner, y la adjudicó a favor de Xpert´s.

Inconforme con la determinación de la Junta de Reconsideración, IM Winner solicitó revisión administrativa ante este Tribunal. (Revisión Administrativa número KLRA-2002-00009). El 27 de marzo de 2002 y notificada el 4 de abril de 2002, un panel hermano de este Tribunal emitió una resolución en la que denegó la expedición del recurso solicitado por IM Winner, por lo que la determinación de la Junta de Reconsideración advino final y firme.

El 7 de julio de 2007, IM Winner presentó una demanda en cobro de dinero contra la AIJ, la Administración de Corrección y Rehabilitación, el Estado Libre Asociado de Puerto Rico y sus respectivas compañías aseguradoras. Alegó que la AIJ le adeudaba la suma de $220,000 por concepto de los servicios de mantenimiento prestados a las instituciones juveniles durante los meses de septiembre a diciembre del año 2001. Arguyó que el 23 de agosto de 2001, la AIJ le adjudicó la buena pro de la Subasta número 02-007, pero que posteriormente el 2 de enero de 2002, el Ing. Amilcar Torres Collazo, Director de Planta Física de la AIJ, llamó al Ing. Manuel Iván Vázquez, Presidente de IM Winner, para indicarle que el´contrato entre ambas entidades había sido cancelado. El 4 de enero de 2002, el Ing. Torres Collazo reiteró la cancelación del contrato mediante comunicación escrita. Luego, el Ing. Torres Collazo le solicitó que sometiera la última factura por concepto de los servicios prestados a la AIJ. Finalmente, planteó que a pesar de haber sometido a la AIJ las facturas correspondientes a los meses de septiembre a diciembre del año 2001, la agencia nunca le pagó.

El 27 de septiembre de 2007, la AIJ contestó la demanda por conducto de la División de Litigios Generales del Departamento de Justicia. Negó que tuviera deuda alguna con IM Winner. Señaló que el contrato suscrito entre ambos terminó el 31 de agosto de 2001.

El 10 de julio de 2008, la AIJ presentó una moción para que dictara sentencia sumaria. Alegó que según la política pública sobre la contratación gubernamental, IM Winner no tiene recurso legal alguno para reclamar el pago por los servicios que alega haber prestado a la AIJ. Arguyó que el contrato que suscribieron las partes originalmente vencía el 30 de junio de 2001, y que luego, éste fue enmendado para extender su vigencia hasta el 31 de agosto de 2001. Planteó que cualquier servicio ofrecido con posterioridad a esa fecha fue en abierta violación a la cláusula 26 del referido contrato que claramente advertía a la apelante que no se le pagaría ningún servicio prestado después de la fecha de expiración del contrato. Alegó que la apelante conocía la reglamentación y los procedimientos vigentes para brindar servicios a la AIJ porque ya antes había firmado por lo menos siete contratos con la AIJ. En cuanto a la alegación de que se le había concedido la buena pro de la Subasta Núm. 02-007, señaló que la misma carece de fundamentos, ya que la adjudicación de la subasta fue impugnada con éxito por Xpert's. Arguyó que IM Winner participó activamente del proceso de impugnación ante la Junta de Reconsideración y acudió ante el Tribunal de Apelaciones para solicitar revisión administrativa, aunque el recurso fue denegado. Precisó que la notificación de la adjudicación de la Subasta Núm. 02-007 no estableció ningún vinculo jurídico entre IM Winner y la AIJ y que el contrato para prestar los servicios de mantenimiento, nunca se llegó a perfeccionar. Por último, solicitó al TPI que desestimara la demanda sumariamente por no existir causa de acción alguna. La AIJ acompañó su petición con los siguientes documentos: (1) contrato de servicios misceláneos núm. 2001-000074 suscrito entre IM Winner y la AIJ; (2) enmienda al contrato de servicios misceláneos núm. 2001-000074 que extiende su vigencia hasta el 31 de agosto de 2001; (3) resolución emitida el 29 de diciembre de 2001 por la Junta de Reconsideración; (4) solicitud de revisión administrativa del caso número KLRA-2002-00009; (5) siete contratos suscritos entre la apelante y la AIJ con anterioridad al contrato núm. 2001-000074.

El 2 de diciembre de 2008, IM Winner presentó su oposición a la moción de sentencia sumaria. Alegó que prestó servicios de mantenimiento mediante brigadas a la AIJ porque le fueron requeridos por la agencia, de modo que tenía una expectativa razonable derivada de la buena fe de que se le iba a pagar. Planteó que la AIJ tenía reservada una partida de su presupuesto para sufragar dichos servicios·y que fue únicamente IM Winner quien

realizó el mantenimiento durante los meses de septiembre a diciembre de 2001. Argumentó que la AIJ le hizo representaciones asegurándole que los trabajos realizados le serían pagados, que se le iba a otorgar el contrato y que el mismo tendría efecto retroactivo. Alegó que incluso la AIJ le solicitó que sometiera las facturas por los trabajos solicitados y prestados. IM Winner acompañó su moción de oposición con los siguientes documentos: (1) algunas páginas de la transcripción de la deposición del Ing. Torres Collazo; (2) facturas mensuales de IM Winner a la AIJ por los servicios de mantenimiento de septiembre a diciembre de 2001; (3) carta de 10 de septiembre de 2001 del Ing. Torres Collazo al Ing. Vázquez; (4) carta de 4 de enero de 2002 del Ing. Torres Collazo al Ing. Vázquez; (5) cartas de 3 de marzo de 2004, 2 de febrero de 2005, 29 de junio de 2005 del Ing. Vázquez al Ing. Torres Collazo en las que requirió el pago de las facturas de 2001.

El 5 de febrero de 2009, el TPI emitió la sentencia sumaria apelada por medio de la cual desestimó con perjuicio la demanda presentada por la apelante. La misma fue notificada el 13 de marzo de 2009. El TPI, en esencia, determinó que conforme a los hechos estimados probados y el derecho aplicable no existía obligación alguna de parte de AIJ de pagarle a IM Winner por los servicios alegadamente prestados a partir de 31 de agosto de 2001. Ello, por razón de que a partir de tal fecha no existía un contrato entre las partes. Además, concluyó que si algún funcionario de la apelada le solicitó la continuación de los servicios de mantenimiento, ésta los prestó sin autoridad alguna. Por último, aclaró que la adjudicación de la subasta 02-007 no le concedió derecho alguno a la apelante para proveer los servicios de mantenimiento a AIJ, pues no se firmó un contrato entre las partes, a partir del 1ro de septiembre de 2001 para la concesión de tales servicios.

Insatisfecha, el 30 de marzo de 2009, IM Winner presentó una moción de reconsideración en la cual reiteró los argumentos esbozados en su moción de oposición a la moción de sentencia sumaria. El 6 de abril de 2009, notificada el 14 de abril de 2009, el TPI la declaró no ha lugar.

Inconforme aún, el 12 de mayo de 2009, IM Winner acudió ante nos con la apelación de epígrafe. Hace los siguientes señalamientos de error:

"PRIMER ERROR

Erró el Honorable Tribunal de Instancia al dictar sentencia sumaria en el presente caso aún cuando existe una controversia de hecho sobre la autorización realizada por la Administración de Instituciones Juveniles.

SEGUNDO ERROR

Erró el Honorable Tribunal de Instancia al dictar sentencia sumaria en el presente caso aun cuando restaba culminar el descubrimiento de prueba de la parte apelante.

TERCER ERROR

En alternativa, erró el Honorable Tribunal de Instancia al dictar sentencia sumaria en el presente caso aun cuando los hechos incontrovertidos presentados por la parte apelante demuestran que IM Winner, Inc. tenía una expectativa razonable derivada de la buena fe de que los trabajos realizados serían pagados."

El 10 de junio de 2009 compareció la AIJ por medio de la Procuradora General. Alegó que el TPI no abusó de su discreción al disponer del caso de epígrafe sumariamente porque no existe un contrato escrito entre las partes. Señaló que no se trata de un caso en que se haya dictado sentencia sumaria por insuficiencia de prueba, sino de uno en que la determinación se fundamentó en hechos incontrovertidos. Planteó que la deposición del Subadministrador de la AIJ que IM Winner alega que aún no ha tomado no cambia en nada el resultado de este caso porque el mismo trata exclusivamente de una controversia de derecho. Alegó que la apelante no tiene derecho a solicitar el reembolso por los servicios que alega prestó a la AIJ porque nuestro ordenamiento jurídico

exige que para perfeccionar un contrato con un entidad gubernamental éste debe constar por escrito y firmado por una autoridad competente para gravar las asignaciones de fondos. Por último, arguyó que IM Winner debe asumir las consecuencias por haber prestado unos servicios en abierta violación al contrato suscrito entre las partes y a sabiendas de que la subasta que originalmente le fue adjudicada estaba siendo impugnada ante la Junta de Reconsideración.

Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

### A

Es norma reiterada que mediante la moción de sentencia sumaria, regulada por la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, un tribunal puede disponer de un caso sin celebrar vista en su fondo en aquellas situaciones en que la parte que la solicita demuestra que no existe controversia en cuanto a los hechos esenciales alegados en la demanda y que tan sólo resta disponer de las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. 881 (1994); *Medina v. M. S. & D. Química P.R., Inc.,* 135 D.P.R. 716 (1994); *Caquías v. Asoc. Res. Mansiones Río Piedras,* 134 D.P.R. 181 (1993); *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272 (1990).

El propósito de la sentencia sumaria es resolver justa, rápida y económicamente, los pleitos en los que, por no existir una controversia real de hechos, resulta innecesario celebrar un juicio en su fondo. *Rosario v. Nationwide Mutual,* 158 D.P.R. 775 (2003); *González Pérez v. E.L.A.,* 138 D.P.R. 399 (1995); *González v. Alicea,* 132 D.P.R. 638 (1993); *Mercado Vega v. U.P.R.,* 128 D.P.R. 273 (1991); *Padín v. Rossi,* 100 D.P.R. 259 (1971). "El sabio discernimiento es el principio rector para su uso porque, mal utilizada, [la sentencia sumaria] puede prestarse para despojar a un litigante de su 'día en corte', principio elemental del debido proceso de ley." *Roig Com. Bank v. Rosario Cirino,* 126 D.P.R. 613, 617 (1990).

En este contexto, el tribunal debe analizar si existen o no controversias en cuanto a los hechos y si en derecho procede emitir sentencia a favor de la parte que la solicita. No cabe duda que un tribunal debe dictar sentencia sumaria a favor de la parte promovente si de los autos y de los documentos presentados en apoyo y oposición de dicha moción, surge que no existe controversia alguna en cuanto a los hechos esenciales y que, como cuestión de derecho, procede que se dicte la misma a favor de dicha parte.

No obstante, como tal determinación implica la adjudicación de un litigio sin que las partes tengan la oportunidad de presentar su caso ante el tribunal, la jurisprudencia ha concebido la sentencia sumaria como un remedio extraordinario que sólo debe ser concedido cuando el derecho del promovente surge con claridad. *García v. Darex P.R., Inc.,* 148 D.P.R. 364 (1999). Además, se puede conceder cuando el promovente ha tenido una oportunidad adecuada de demostrar que el oponente no tiene derecho a que se emita sentencia a su favor como cuestión de derecho. *M.J.C.A. v. Julio E.,* 124 D.P.R. 910 (1989); *González Pérez v. E.L.A., supra*; *Flores v. Municipio de Caguas,* 114 D.P.R. 521 (1983); *Sucn. Meléndez v. D.A.C.O.,* 112 D.P.R. 86 (1982).

De otro lado, le corresponde a la parte promovida rebatir dicha posición por vía de declaraciones juradas u otra documentación que apoye su posición, pues si bien el no hacerlo no significa necesariamente que ha de emitirse el dictamen sumario automáticamente en su contra, tal omisión le pone en riesgo de que ello ocurra. *Corp. of Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714 (1987); *Flores v. Municipio de Caguas, supra.* Esto significa que toda duda sobre si un hecho fue controvertido debe resolverse a favor de la parte que se opone a la moción porque en esta etapa del procedimiento el juez no debe considerar la credibilidad de los documentos.

La Regla 36.3 le impone al juez que considera una solicitud de sentencia sumaria la obligación de

considerar no sólo las declaraciones juradas sometidas para sustentarlas o las contradeclaraciones juradas de la parte contraria, sino también "las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas" amén de "todo documento admisible en evidencia" que obre en autos. *Mgmt. Adm. Servs. Corp. v. E. L.A.,* 152 D.P.R. 599 (2000); *Flores v. Municipio de Caguas, supra* (1983); *Padín v. Rossi, supra.* Al tenor de esta obligación, el juzgador deberá analizar concienzudamente la moción de sentencia sumaria y su oposición, con sus respectivos anejos y el expediente en su totalidad, con el propósito de determinar si queda algún hecho material en controversia o si existen alegaciones afirmativas en la demanda que no han sido refutadas. En cualquiera de dichos casos, de ello ser así, el tribunal deberá denegar la solicitud de sentencia sumaria. *Cuadrado v. Santiago Rodríguez, supra; Corp. of Presiding Bishop CJC of LDS v. Purcell, supra.* Una vez el tribunal tiene ante sí todos los documentos debe analizar los hechos en la forma más favorable a la parte que se opone a que se dicte sentencia sumaria. *Méndez Arocho v. El Vocero de P.R.,* 130 D.P.R. 867 (1992). La duda por parte del tribunal sobre la existencia o no de una controversia de hechos en el caso bajo su consideración, derrota la moción de sentencia sumaria. *Corp. Presiding Bishop CJC of LDS v. Purcell, supra.* Así, "[s]ólo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. (Cita de caso omitida). Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria". *Mgmt. Adm. Servs. Corp. v. E.L.A., supra.*

## B

Nuestro ordenamiento jurídico ha establecido que en materia de contratos se le brinda gran libertad de acción a las partes que deseen obligarse, reconociéndose así la autonomía de la voluntad de los contratantes. Este principio permite que las partes contratantes establezcan los pactos, cláusulas y condiciones que tengan por convenientes siempre que no sean contrarias a las leyes, la moral y el orden público. Artículo 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3372.

Al interpretar el Artículo 1207 del Código Civil de Puerto Rico, que requiere que los contratos no sean contrarios al orden público, no se puede ignorar que en la contratación por el Estado la sana y recta administración de los fondos del erario está revestida del más alto interés público, y que todo organismo gubernamental está obligado a observar cabalmente la esencia del principio consagrado en la Sección 9 del Artículo VI, de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A., Art. VI, Sec. 9, que dispone:

"Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley."

Asimismo, la Ley de Contabilidad del Gobierno de Puerto Rico ("Ley de Contabilidad"), 3 L.P.R.A. secs. 283 *et seq.*, establece la política del Estado Libre Asociado de Puerto Rico en relación con el control y la contabilidad de los fondos y la propiedad pública. La misma establece las pautas para manejar efectivamente la contabilidad del País tomando en consideración las necesidades y responsabilidades de las ramas judicial, legislativa y ejecutiva. Las operaciones de cada entidad gubernamental o corporativa deben estar enmarcadas en unas normas de legalidad, corrección, exactitud y necesidad, por lo que los gastos del Gobierno deben ser útiles y austeros.

Para poder realizar un desembolso de fondos públicos es necesario demostrar que los mismos están autorizados por ley. El Secretario de Hacienda contabiliza sólo las obligaciones que hayan sido previamente aprobadas por el jefe de la dependencia correspondiente o por el funcionario o empleado que éste designe como su representante autorizado. Artículo 9, inciso (a), 3 L.P.R.A. sec. 283h. De todo lo anterior, se colige que de no estar debidamente autorizada la obligación contraída por la persona facultada para ello, el Secretario de Hacienda está imposibilitado de desembolsar fondos públicos para el pago de cualquier reclamación que presente una parte.

En cuanto a los contratos otorgados por las agencias gubernamentales, el Artículo 1 de la Ley Núm. 18 de 30 de octubre de 1975, 2 L.P.R.A. sec. 97, establece lo siguiente:

"... [l]os departamentos, agencias, instrumentalidades, oficinas y todo otro organismo y los municipios del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha del otorgamiento del contrato o la enmienda."

La antes citada legislación fue objeto de interpretación por el Tribunal Supremo en *Ocasio Carrasquillo v. Rosa Berríos,* 121 D.P.R. 37, 53-54 (1988), en el cual expresó que:

"Este precepto, también de sana política administrativa pública, refleja el interés legislativo de evitar pagos y reclamaciones fraudulentas o ilegales, al crear un mecanismo de cotejo para perpetuar circunstancial y cronológicamente dichos contratos, y requiere que: (1) se reduzcan a escrito; (2) se mantenga un registro fiel con miras a *prima facie* establecer su existencia; (3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencias; y (4) se acredite la certeza de tiempo, esto es, haber sido realizado y otorgado quince (15) días antes. En armonía con este diseño, los tribunales debemos mirar con cautela reclamaciones fundadas y de acuerdo con contratos, en los cuales las autoridades ejecutantes no han dado cumplimiento a este mandato. Solamente así puede quedar plenamente satisfecho el sentir legislativo y la conciencia judicial adjudicativa sobre desembolsos de fondos públicos."

En *Las Marías Lab. Corp. v. Mun. de San Juan,* 159 D.P.R. 868 (2003), el Tribunal Supremo nuevamente interpretó el citado artículo y una disposición similar de la Ley de Municipios Autónomos. En dicho caso, el Municipio de San Juan suscribió un contrato de servicios con Las Marías Lab. Corp. Luego de expirar el contrato, las partes intercambiaron unas cartas en las cuales se acordaron unos servicios adicionales. Esas cartas nunca fueron registradas en la Oficina del Contralor. El Municipio de San Juan sólo pagó las facturas relacionadas a los servicios prestados durante la vigencia del contrato original y objetó las restantes facturas porque los servicios fueron prestados fuera del término del contrato original. El tribunal de instancia emitió sentencia a favor de Las Marías Lab. Corp., la cual fue confirmada por el Tribunal de Apelaciones. El Municipio de San Juan acudió ante el Tribunal Supremo, el cual revocó dicha sentencia y señaló que:

"Al interpretar anteriormente estas disposiciones [Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975 y Art. 8.004 de la Ley de Municipios Autónomos], expresamos que las mismas 'reflejan la intención legislativa de crear un mecanismo de cotejo y publicidad de los contratos otorgados por los municipios, que tiene carácter constitutivo respecto a la eficacia de éstos'. (Citas omitidas y énfasis en el original) Por ende, la inexigibilidad de los contratos municipales no remitidos al Contralor responde al hecho de que los mismos no se consideran legalmente perfeccionados. Es decir, todo pacto entre una parte privada y un municipio en que no se siga el trámite dispuesto por ley, es nulo. *Hatton v. Mun. de Ponce,* 134 D.P.R. 1001, 1007 (1994). Este postulado opera indistintamente si el contrato en cuestión es un acuerdo original, o una extensión o renovación." *Fernández & Gutiérrez v. Mun. de San Juan, supra,* a la pág. 832.

Asimismo se ha precisado que la rigurosidad de los requisitos de contratación con el Estado se debe al gran interés de éste en promover una sana y recta administración pública, con el fin de prevenir el "dispendio, la extravagancia, el favoritismo y la prevaricación en los contratos gubernamentales." *De Jesús González v. A.C.,* 148 D.P.R. 255, 268 (1999). Estas normas existen para proteger el interés público, no a las partes contratantes y las mismas se interpretan en forma inflexible porque se presume que las partes que contratan con el Estado o un municipio conocen las normas sobre tal contratación. *Las Marías Lab. Corp. v. Mun. de San Juan, supra; Hatton v. Mun. de Ponce,* 134 D.P.R. 1001 (1994).

En *Ríos v. Mun. de Isabela,* 159 D.P.R. 839 (2003), se evaluó la validez de un contrato verbal entre un

alcalde y unos contratistas, por una situación de emergencia. Luego de que los contratistas realizaron el trabajo y requirieron el pago, el municipio se negó a pagar. Los contratistas demandaron. Posteriormente, la Asamblea Municipal emitió una resolución convalidando el acuerdo verbal y se firmó una estipulación en el aludido caso, mediante la cual el municipio se comprometió a pagar el dinero adeudado. La estipulación fue aceptada por el tribunal de instancia, el cual procedió a dictar sentencia a tales efectos. La transacción se llevó a cabo en un momento en que el municipio estaba en un cambio de administración. El nuevo alcalde solicitó reconsideración de la sentencia al advenir en conocimiento del caso. El tribunal de instancia rechazó la reconsideración por el fundamento de que carecía de jurisdicción para revisar la misma. El Tribunal de Apelaciones confirmó la sentencia de foro de instancia. El Tribunal Supremo revocó la sentencia, reiterando la estricta aplicación de los requisitos dispuestos para la contratación con municipios. Sostuvo que por no haber un contrato escrito, el mismo no se registró en la Oficina del Contralor; por lo tanto, era nulo. Determinó que la ratificación del acuerdo verbal carecía de validez porque no se podía convalidar un acto que adolecía de nulidad absoluta. El Alto Foro reiteró que todo contrato nulo es inexistente en Derecho desde el momento mismo en que se otorga y, por lo tanto, no puede ser objeto de confirmación.

Resulta claro que la política pública en cuanto a las normas de contratación con el Estado, sus instrumentalidades y los municipios, es que las mismas se interpretan en forma inflexible, que el interés público en la adecuada utilización de los fondos públicos es superior al interés particular de las partes contratantes y el Tribunal Supremo consistentemente se ha negado a reconocerle validez a acuerdos que no cumplen estrictamente con las normas de contratación con el Estado, declarando los mismos nulos. Ello, aun cuando sean contratos por situaciones de emergencia. *Ríos et al. v. Mun. de Isabela, supra; Fernández & Gutiérrez v. Mun. de San Juan,* 147 D.P.R. 824, 830 (1999).

El 31 de mayo de 2004, la Asamblea Legislativa aprobó una enmienda al Artículo 1 de la Ley Núm. 18 de 30 de octubre de 1975, Ley de Registro de Contratos en la Oficina del Contralor de P.R. **[1]** En dicha enmienda dispuso que el incumplimiento con el requisito de las entidades municipales y gubernamentales de mantener un registro de los contratos que otorguen y de remitir copia de éstos a la Oficina del Contralor no será causa para que se decrete la nulidad del negocio en cuestión. Como resultado, se estableció que la única consecuencia de este incumplimiento sería la falta de autorización para desembolsar pago alguno, por lo que no se podrá exigir ninguna contraprestación hasta tanto se haya dado cumplimiento con lo allí dispuesto. Aclaramos que esta enmienda se refiere únicamente a los requisitos de mantener un registro y remitir copia de los contratos a la Oficina del Contralor y nada dispone en torno al requisito de otorgar los contratos gubernamentales por escrito.

Cónsono con la referida enmienda, en *Lugo Ortiz v Municipio de Guayama,* 162 D.P.R. 208 (2004), el Tribunal Supremo expresó lo siguiente:

"Es importante recalcar que las enmiendas antes discutidas no tienen el efecto de alterar la política pública establecida en nuestro ordenamiento jurídico a los efectos de que la buena administración de un gobierno conlleva realizar sus funciones como comprador con la mayor eficacia a los fines de proteger los intereses y dineros del pueblo. Ello responde al gran interés del Estado en promover una sana y recta administración pública, previniendo el despilfarro, la corrupción y el amiguismo en la contratación gubernamental."

Igualmente, en *Cordero Vélez v. Municipio de Guánica,* 170 D.P.R. \_\_\_\_ (2007), **2007 J.T.S. 29,** el Tribunal Supremo señaló que esta enmienda no alteró la política pública que persigue los demás requisitos establecidos por ley y jurisprudencia, ya que sigue siendo necesario e indispensable para la validez del contrato su perfeccionamiento y que conste por escrito.

Así, el requisito de contrato escrito es uno de carácter formal o sustantivo que sirve como mecanismo profiláctico para evitar pagos y reclamaciones fraudulentas e ilegales. *Quest Diagnostic v. Municipio de San Juan,* 175 D.P.R. \_\_\_ (2009), **2009 J.T.S. 80;** *Colón v. Municipio de Arecibo,* 170 D.P.R. \_\_\_\_ (2007),

Reiteradamente, el Tribunal Supremo ha expresado que los entes privados tienen el deber de asegurarse del cumplimiento de la ley al contratar con las entidades gubernamentales, o se arriesgan a asumir la responsabilidad por sus pérdidas. *Colón v. Municipio de Arecibo, supra.* En consecuencia, nuestro más alto foro dispuso la inaplicabilidad de cualquier remedio en equidad por los daños sufridos por no adherirse a la normativa establecida. *Quest Diagnostic v. Municipio de San Juan, supra; Las Marías v. Municipio de San Juan, supra.*

## III

En síntesis, los tres señalamientos de error de IM Winner plantean que el TPI abusó de su discusión al disponer del caso de epígrafe de manera sumaria, debido a que no había concluido el descubrimiento de prueba. Alega que le faltaba tomar la deposición al Subadmnistrador de la AIJ, testimonio que según su creencia hubiera establecido que los servicios fueron autorizados por él.

Además la apelante alega que existe una controversia de hechos porque la AIJ autorizó los pagos, de modo que creó una expectativa razonable basada en la buena fe contractual de que los pagos por los servicios prestados iban a ser satisfechos. No le asiste la razón en ninguno de sus planteamientos.

Es norma reiterada que los contratos suscritos por entidades gubernamentales deben constar por escrito; de otra manera, se considerarán nulos. No hay duda en cuanto a que IM Winner y la AIJ no firmaron contrato escrito alguno después de la terminación de la extensión del contrato número núm. 2001-000074. Por tanto, cualquier acuerdo verbal entre IM Winner y algún funcionario de la AIJ carece de validez legal.

La apelante está impedida de alegar que no conocía de este requisito formal. El desconocimiento de la ley, no exime de su cumplimiento. Antes de continuar prestando los servicios de mantenimiento sin suscribir un contrato por escrito, debió informarse adecuadamente.

Por otro lado, no se trata del primer contrato que IM Winner suscribe con la AIJ. Siendo así, debemos inferir que ésta conocía la reglamentación interna de la agencia y las leyes vigentes que son de aplicación a la contratación gubernamental.

La notificación de la adjudicación de la Subasta Núm. 02-007 no estableció vínculo legal alguno para prestar los servicios de mantenimiento más allá de la vigencia del contrato otorgado entre IM Winner y la AIJ. La carta de 10 de septiembre de 2001 que presenta la apelante como evidencia de que la agencia consistió a que prestara sus servicios quedó sin efecto cuando Xpert's solicitó la paralización de la adjudicación de la subasta, al impugnar la misma ante la Junta de Reconsideración. Véase, Apéndice de la apelante, pág. 130. La apelante participó activamente del proceso de impugnación de la subasta con su representación legal. Luego, acudió ante este foro para impugnar la determinación de la Junta de Reconsideración que dejó sin efecto la adjudicación hecha a su favor.

Como bien señala la Procuradora General en su alegato de oposición, en este caso no existe ninguna controversia de hecho; sólo es preciso aplicar el derecho vigente. De este modo, resulta inconsecuente si el Subadministrador de la AIJ u otro funcionario autorizó que la apelante continuara prestando servicios a la agencia. Según nuestro ordenamiento jurídico, este tipo de actuación fue hecha sin la autoridad legal para ello, porque los contratos suscritos por las entidades gubernamentales tienen que constar por escrito, sino son nulos.

Finalmente, resta por señalar que la cláusula 26 del contrato número 2001-000074 suscrito entre IM Winner y la AIJ expresamente advertía a la apelante que no se pagaría ningún servicio prestado después de la expiración del contrato. Además, la cláusula 27 del referido contrato indica: "AMBAS PARTES acuerdan que este

contrato no será válido sin la previa autorización del Secretario del Departamento de Corrección y Rehabilitación." Apéndice de la apelante, pág. 29. Somos del criterio que IM Winner conocía que el Ing. Torres Collazo, Director de Planta Física de la AIJ, no tenía autoridad en ley para autorizar que continuara prestando los servicios de brigadas de mantenimiento en las instituciones de la agencia.

Acorde con lo discutido, no se cometieron los errores señalados por los apelantes, por lo que procede confirmar la sentencia sumaria apelada.

**IV**

Por los fundamentos expuestos, confirmamos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 5 de febrero de 2009 y notificada el 13 de marzo de 2009.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

**ESCOLIO 2009 DTA 100**

**1.** Ley Núm. 127 de 31 de mayo de 2004.