EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| L.P.C. & D., INC.<br><br>       Recurrida<br><br>              v.<br><br>Autoridad de Carreteras y Transportación<br><br>       Peticionaria<br><br>Ferrovial Agroman, S.E.; Del Valle Group, S.P.; Constructora Santiago II Corp. Y CD Builders, Inc.<br><br>       Partes con Interés | Certiorari<br><br>2012 TSPR 74<br><br>185 DPR ____ |

Número del Caso: CC-2010-811


Fecha: 18 de abril de 2012


Tribunal de Apelaciones:

        Región Judicial de San Juan, Panel I

Abogados de la Parte Peticionaria:

        Lcdo. Ricardo Arturo Pérez Rivera
        Lcdo. Kermell Z. Hernández Rivera
        Lcdo. Carlos D. Rodriguez Boneta
        Lcdo. David O. Martorandi-Dale

Abogados de la Parte Recurrida:

        Lcdo. Roberto Corretjer Piquer

Asociación de Contratistas Generales de P.R.:

        Lcdo. Roberto Lefranc Romero

Gobierno de Puerto Rico:

        Lcdo. Eliezer Aldarondo Ortiz
        Lcda. Rosa Campos Silva
        Lcdo. Eliezer Aldarondo López

Materia: Revisión Administrativa procedente de la Autoridad de Carreteras y Transportación


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| L.P.C. & D., INC.<br><br>RECURRIDA<br><br>v.<br><br>AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN<br><br>PETICIONARIA<br><br>FERROVIAL AGROMAN, S.E.; DEL VALLE GROUP, S.P.; CONSTRUCTORA SANTIAGO II CORP. Y CD BUILDERS, INC.<br><br>PARTES CON INTERÉS | *Certiorari*<br><br><br><br>**Núm.: <u>CC-2010-811</u>** |

**Sentencia**
**(En Reconsideración)**

En San Juan, Puerto Rico, a 18 de abril de 2012.

**I**

El viernes 24 de octubre de 2008 la Autoridad de Carreteras y Transportación (Autoridad) celebró la Subasta Formal Núm. P-09-09 (Subasta) para la construcción de una intersección a desnivel entre las Carreteras PR-17 y PR-181 (Proyecto AC-001736). En la misma se leyeron en voz alta las propuestas recibidas y se señalaron los errores e informalidades cometidas por algunos de los licitadores. Sobre el particular, en el *Acta de Recepción* de la Subasta se consignó que L.P.C. & D., Inc. (LPCD o la recurrida) no había incluido la cantidad de cubierta de la fianza en el

"Bid Bond", por lo que la Junta de Subastas (Junta) le concedió tres (3) días calendario, es decir, hasta las dos de la tarde (2:00 p.m.) del próximo lunes 27 de octubre de 2008 para que reemplazara el mismo.[1] Efectivamente, el 27 de octubre de 2008 LPCD sometió la fianza de licitación solicitada.

El 20 de noviembre de 2008, la Junta emitió un *Acta de Adjudicación* en la que manifestó que, luego de haber analizado las propuestas sometidas, recomendaba la adjudicación de la Subasta a LPCD, postor más bajo que había cumplido con todas las especificaciones.[2] Dicha *Acta de Adjudicación* fue aprobada por el Director Ejecutivo de la Autoridad el 24 de noviembre de 2008.

Así las cosas, el 12 de diciembre de 2008 la Autoridad y LPCD firmaron el contrato para la construcción del Proyecto AC-001736. Ese mismo día se emitió la *Orden de Comienzo*, donde se advertía a la recurrida que la construcción del Proyecto debía iniciarse no más tarde de diez (10) días calendarios a partir de la fecha de ese documento.

---

[1]    En el *Aviso de Subasta* publicado por la Junta se había especificado: "Toda propuesta deberá venir acompañada de una fianza provisional equivalente al cinco por ciento (5%) de la propuesta y sujeto a las condiciones que se expresan en el Artículo 102.08 de las Condiciones Generales…".

[2]    La proposición sometida por LPCD y aceptada por la Autoridad ascendía a veinticinco millones setecientos treinta y tres mil ochocientos treinta dólares ($25,733,830.00).

CD Builders, Inc. (CD Builders), compañía que presentó la segunda propuesta más baja, no estuvo conforme con la determinación de la Autoridad de adjudicarle la Subasta a LPCD. Por dicho motivo, el 15 de diciembre de 2008 presentó un recurso de revisión judicial ante el Tribunal de Apelaciones (TA) bajo el fundamento de que el defecto cometido por LPCD, de no incluir una fianza equivalente al cinco por ciento (5%), no era subsanable. El TA acogió una moción en auxilio de jurisdicción, presentada junto con el recurso de revisión judicial, y ordenó la paralización de todo procedimiento de contratación relacionado con la Subasta, hasta tanto resolviera el recurso.[3]

Mediante Sentencia emitida el 30 de enero de 2009, el foro apelativo intermedio sostuvo que el no incluir la cantidad correspondiente en el documento de fianza constituyó un defecto subsanable, por lo que confirmó la decisión del Director Ejecutivo de la Autoridad de adjudicarle la Subasta a LPCD.

De dicha determinación, CD Builders acudió ante este Foro mediante una petición de *certiorari* y una moción en auxilio de nuestra jurisdicción. Luego de ordenar la

---

[3] Es menester señalar que desde la fecha en que la Autoridad expidió la *Orden de Comienzo* hasta la notificación de la *Orden de Paralización* del TA, LPCD había realizado "labores misceláneas menores en el Proyecto AC-001736 … tales como la instalación del rótulo de identificación del proyecto e instalación de módulos temporeros".

paralización del proyecto AC-001736,**4** emitimos la Opinión
Aut. de Carreteras v. CD Builders, Inc., 177 D.P.R. 398
(2009), por medio de la cual sostuvimos que "la omisión de
incluir la suma afianzada en el documento de fianza no
constituyó un mero tecnicismo o informalidad sino un
defecto sustancial pues impedía considerar el documento de
fianza presentado por LPCD como una garantía de
proposición aceptable". Resolvimos, en consecuencia, que
procedía descalificar la propuesta de LPCD. Por tanto,
revocamos la Sentencia del TA y devolvimos el caso al foro
administrativo para que la Autoridad continuara el proceso
de la Subasta de conformidad con lo establecido en la Ley
de la Autoridad y en su Reglamento de Subastas.

A la luz de nuestra decisión, el 20 de noviembre de
2009 la Autoridad, mediante la *Resolución en Cumplimiento
de Orden del Tribunal Supremo,* concluyó que por LPCD no
incluir una garantía de proposición aceptable en conjunto
con su propuesta, ésta no era elegible para recibir la
buena pro de la Subasta y, por lo tanto, el contrato
celebrado con la misma había sido suscrito en violación de
la ley. Determinó, entonces, que dicho contrato era
inexistente o nulo *ab initio*. Resolvió, además, que al

---

**4**      Según se desprende de la *Resolución en Cumplimiento de Orden del Tribunal Supremo* emitida por la Autoridad el 20 de noviembre de 2009:

> 18.    La única actividad realizada por LPCD desde el 10 de febrero de 2009, fecha en que se queda sin efecto la orden de paralización del Tribunal de Apelaciones, hasta el 24 de febrero de 2009, fecha en que la ACT emite la orden formal de paralización, fue la entrega a la ACT del itinerario de trabajo ('Progress Schedule')….

LPCD suscribir el contrato con la Autoridad sin haber transcurrido los términos para solicitar reconsideración o revisión judicial, conocía del riesgo de ser descalificado como licitador y, por consiguiente, cualquier daño sufrido fue "auto infligido y cualquier gasto desembolsado, a su costo". La Autoridad decretó, en adición, la anulación de la Subasta por recomendación de la Junta.[5]

No conforme con la antedicha Resolución de la Autoridad, la recurrida presentó una solicitud de reconsideración ante el Director Ejecutivo de la Autoridad y ante la Junta. En la misma reconoció que la Autoridad poseía la facultad de anular subastas, tal y como lo había hecho en el caso de autos. Sin embargo, sostuvo que dicha agencia había actuado ilegalmente y de forma *ultra vires* al adjudicar los derechos contractuales que cobijaban a LPCD en el contrato suscrito con éstos. Específicamente argumentó que "[l]a controversia sobre los derechos de LPCD contra la ACT como resultado del otorgamiento del contrato y los gastos incurridos por ésta es una controversia que deberá ser resuelta en un tribunal y no por la vía administrativa". La Autoridad declaró sin lugar la solicitud de reconsideración mediante *Resolución* emitida a esos efectos el 2 de diciembre de 2009.

LPCD recurrió, entonces, al TA dentro del término dispuesto en la Ley de Procedimiento Administrativo

---

[5] La Junta recomendó la anulación de la Subasta debido a la falta de fondos disponibles para las obras de construcción.

Uniforme, 3 L.P.R.A. sec. 2172 (Supl. 2011), mediante un recurso de revisión judicial. Sostuvo que la actuación de la Autoridad al adjudicar derechos contractuales de LPCD resulta *ultra vires* y nula, dado que dicha facultad adjudicativa no les fue delegada mediante legislación.[6] El TA dictó Sentencia el 12 de julio de 2010, notificada y archivada en autos el próximo día 14, revocando la Resolución recurrida. Concluyó que, aunque la Autoridad tenía facultad en ley para anular el proceso de subasta, dicha facultad no la autorizaba a anular el contrato suscrito con LPCD y a adjudicar derechos que surgieran a raíz del mismo.[7]

De dicho dictamen, la Autoridad recurrió ante nos mediante una petición de *certiorari*, planteando como único señalamiento de error:

---

[6]    LPCD planteó como único señalamiento de error:

   Erró la Junta de Subastas de la Autoridad al pretender adjudicar en su Resolución derechos sustantivos que le asisten a LPCD como resultado de la cancelación del contrato habido entre las partes, la Orden de Comienzo y la de paralización de los trabajos ("stop work order"). La única función delegada por legislación a la Autoridad, en el asunto que nos ocupa, lo es la de adjudicar o no la buena pro de la subasta y anular la misma como lo ha decidido. La Autoridad no tiene facultad delegada en ley para autoproclamarse juez y parte en la posible reclamación que pudiera tener LPCD contra ésta como resultado de la cancelación del contrato habido entre las partes y adjudicar la misma de antemano, sin que se le haya sido aún ni siquiera formulada, haciendo determinaciones de hecho sin vista y sin haber escuchado la prueba. La Resolución de la Autoridad pretende adjudicar unos hechos y el derecho de LPCD. La acción de la Autoridad es lo que se conoce en el idioma [i]nglés como un "preventive strike"[.] Al no tratarse lo resuelto en la Resolución en cuanto a los derechos de LPCD de materia que requiera el *expertise* de la Autoridad, sino que se trata de una adjudicación de cuestiones de derecho, la Resolución, en cuanto a dicho asunto, puede ser revisada en todos sus aspectos y debe ser revocada en cuanto a lo resuelto respecto a LPCD. (Énfasis en el original).

[7]    La Autoridad presentó una *Moción de Reconsideración* a dicha determinación del TA, sin embargo, la misma fue declarada *No Ha Lugar* mediante Resolución emitida el 6 de agosto de 2010 por dicho foro.

ERRÓ EL TRIBUNAL DE APELACIONES AL DETERMINAR QUE LA ACT ACTUÓ *ULTRA VIRES* AL CANCELAR SU CONTRATO CON LPCD PARA LA SUBASTA P-0909, EN VIRTUD DE QUE EL REFERIDO CONTRATO ES NULO *AB INITIO*, CONFORME A LO RESUELTO POR ESTE HONORABLE TRIBUNAL EN EL CASO <u>CD BUILDERS V. AUTORIDAD DE CARRETERAS</u>, 2009 T.S.P.R. 164.

En apoyo al recurso, la Autoridad alegó que su determinación de 20 de noviembre de 2009 no fue arbitraria, caprichosa, ni irrazonable, sino que la misma se encontraba dentro del marco de discreción y flexibilidad que le concede su ley habilitadora y su Reglamento de Subastas. Adujo que, en virtud de nuestra decisión en <u>Aut. de Carreteras v. CD Builders, Inc.</u>, *supra*, disponiendo que procedía descalificar la propuesta de la recurrida por no incluir una garantía de proposición aceptable, "el contrato suscrito entre la ACT y LPCD <u>nunca existió ni creó relación jurídica alguna entre las partes</u>". La Autoridad destacó que al adjudicarle la buena pro a LPCD había actuado en contravención a su reglamento de subastas y a las condiciones generales de contratación, es decir, contrario a la ley, por lo que el contrato celebrado con LPCD resultaba completamente nulo.

Luego de concederle a los recurridos un término para que mostraran causa por la cual no se debía revocar la Sentencia dictada por el TA y de otros trámites procesales, incluyendo la admisión como *amicus curiae* de la Asociación de Contratistas Generales de Puerto Rico (Asociación de Contratistas), el 30 de junio de 2011 dictamos Sentencia expidiendo el auto de *certiorari* y

revocando el fallo emitido por el foro apelativo intermedio. Mediante dicho dictamen, se reinstaló la *Resolución en Cumplimiento de Orden del Tribunal Supremo* emitida por la Autoridad el 20 de noviembre de 2009.

En aquel momento basamos nuestra determinación en la doctrina firmemente establecida en nuestro sistema de derecho de concederle deferencia a las determinaciones de las agencias administrativas. Acudimos, de la misma forma, a la norma de nulidad de los actos realizados en contra de la ley recogida en el Artículo 4 de nuestro Código Civil, 31 L.P.R.A. sec. 4 (1993), y a lo resuelto anteriormente por esta Curia relativo a que en la contratación pública todo pacto entre una parte privada y una agencia, en el cual no se siga el trámite dispuesto en ley, es nulo. De ese modo, confirmamos la conclusión a la que había llegado la Autoridad de que el contrato suscrito entre ésta y la recurrida es nulo *ab initio*, por haberse perfeccionado en contra de lo dispuesto en la ley.

El 15 de julio de 2011 LPCD y la Asociación de Contratistas comparecieron mediante *Moción Conjunta de Reconsideración* ante este Foro. Argumentaron que mediante la Resolución de la Autoridad de 20 de noviembre de 2009, ésta se enriquece injustamente, mientras LPCD sufre una disminución en su patrimonio, por actuaciones que le son imputables únicamente a la Autoridad. Específicamente, aludió al hecho de que fue la propia Autoridad quien le requirió comparecer y firmar el contrato de construcción y

sostuvo que, de no hacerlo, se exponía a que se le ejecutara la fianza de licitación y a que lo removieran del registro de licitadores. Añadió que la Autoridad, además, dio la orden de comenzar las labores de construcción bajo el apercibimiento de penalidades y multas.

Posteriormente, el Gobierno de Puerto Rico (Gobierno) también solicitó intervenir como *amicus curiae*. Acto seguido presentó un escrito de reconsideración de nuestra Sentencia emitida el 30 de junio de 2011, fundamentando la misma en consideraciones de alto interés público y en las consecuencias y efectos negativos que dicha Sentencia podría tener sobre la contratación gubernamental en Puerto Rico.[8] El 22 de julio de 2011 la Autoridad sometió una moción allanándose a la solicitud de reconsideración del Gobierno.

Mediante Resolución emitida el 7 de octubre de 2011, declaramos *Ha Lugar* la intervención del Gobierno como *amicus curiae*. No obstante, proveímos *No Ha Lugar* a la solicitud de reconsideración conjunta de LPCD y la Asociación de Contratistas y a la presentada por el Gobierno y, posteriormente, por la Autoridad.

---

[8] En específico, se refería a la paralización de las obras del gobierno, en aquellos casos en los cuales las subastas para adjudicar la construcción de las mismas hayan sido impugnadas, hasta tanto el tribunal haya emitido una sentencia final y firme. Asimismo, a la consecuente dilación en la construcción de obras y servicios del Gobierno y al aumento en los costos de construcción como consecuencia del nuevo riesgo a ser asumido por los contratistas.

Luego de los múltiples trámites procesales antes desglosados, finalmente el 25 de octubre de 2011 todas las partes en el pleito, incluyendo aquellos que intervinieron como *amicus curiae*, es decir, el Gobierno y la Asociación de Contratistas, acudieron conjuntamente ante nos solicitando reconsideración de nuestra Sentencia de 30 de junio de 2011. En ésta reclamaron que motivos de alto interés público hacían meritorio que decretáramos la validez del contrato suscrito entre LPCD y la Autoridad.

Evaluada dicha comparecencia conjunta, concedimos un término de veinte (20) días a todas las partes para expresar por qué no se debía dejar sin efecto nuestro dictamen por academicidad,[9] dado el hecho de que la Autoridad anuló la Subasta en cuestión debido a la falta de fondos públicos.

Las partes han acudido ante nos en cumplimiento con la Resolución emitida. Todas se oponen a que el caso sea resuelto por razón de academicidad. En mociones por separado las partes han argumentado que la controversia no se ha tornado académica dado que todavía subsiste la interrogante relativa a si la Autoridad tiene que pagarle a LPCD por los trabajos realizados en atención al contrato suscrito entre éstas. Aluden, además, al hecho de que el caso envuelve asuntos que se presentan con frecuencia en la contratación pública, por lo que el mismo puede

---

[9] Resolución de este Tribunal de 18 de noviembre de 2011.

recurrir. Evaluados estos argumentos, procedemos a resolver.

## II

## JUSTICIABILIDAD

Es premisa firmemente establecida en nuestro ordenamiento jurídico que los tribunales tenemos que velar celosamente por nuestra jurisdicción. Conforme a dicho principio y a la doctrina de justiciabilidad, los tribunales limitamos nuestra intervención a aquellos casos que presenten controversias reales y definidas donde se "afectan las relaciones jurídicas de partes antagónicas u opuestas". Torres Santiago v. Depto. Justicia, 181 D.P.R. 969, 981 (2011).

La doctrina de justiciabilidad establece como requisito para el ejercicio válido del poder judicial que exista un caso o controversia real, surgida entre partes opuestas, las cuales acuden al tribunal en busca de un remedio que pueda afectar sus relaciones jurídicas. Asoc. Alcaldes v. Contralor, 176 D.P.R. 150, 157-158 (2009). Dentro del concepto de justiciabilidad, los tribunales evaluamos, además, que la controversia esté aún latente cuando llegue ante nuestra consideración y que ésta continúe viva a través de todo el proceso. Esto es lo que en derecho conocemos como la doctrina de academicidad. "La academicidad recoge la situación en que, aun cumplidos todos los criterios de justiciabilidad, ocurren cambios en los hechos o el derecho durante el trámite judicial que

tornan académica o ficticia la solución del caso." Torres Santiago v. Depto. Justicia, *supra*, a la pág. 982. Además, "[a]l evaluar esta doctrina hay que concentrarse en 'la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente'". Íd. (citando a U.P.R. v. Laborde Torres y otros I, 180 D.P.R. 253, 281 (2010)). "Es decir, debemos evaluar los eventos anteriores, próximos y futuros para determinar si la controversia entre las partes sigue viva y subsiste con el tiempo." Íd. a las págs. 982-983.

Teniendo dichos principios en mente y con miras a asegurar el uso adecuado y efectivo de los recursos judiciales, los tribunales debemos desestimar los casos bajo el fundamento de academicidad cuando los hechos o el derecho aplicable a los mismos han variado de tal forma que ya no existe una controversia vigente entre partes adversas. Moreno v. Pres. U.P.R. II, 178 D.P.R. 969, 974 (2010).

### III

En los últimos incidentes procesales del caso de autos, todas las partes han comparecido conjuntamente solicitando la concesión del mismo remedio. Véanse las páginas 10 y 11 de esta Sentencia en Reconsideración. Sin embargo, no cabe duda de que el asunto ha perdido el carácter de adversidad y de intereses jurídicos antagónicos, característica imprescindible para que el mismo sea considerado como uno justiciable. La

interrogante acerca de si procede que la Autoridad le pague alguna suma de dinero a LPCD es en realidad otra controversia que no es objeto de esta litigación.  En todo caso, sería objeto de otro caso, no de este.

En esta etapa de los procedimientos ya no tenemos un caso o controversia justiciable que amerite nuestra intervención.  La controversia planteada en este caso, además, se ha tornado en académica por la falta de fondos públicos para llevar a cabo las obras de construcción, por lo que no es capaz de recurrir.  Por consiguiente, reconsideramos nuestra Sentencia de 30 de junio de 2011 y dejamos la misma sin efecto.  Del mismo modo y conforme a lo expresado en Moreno v. Pres. U.P.R. II, *supra*, a las págs. 974-975,[10] dejamos sin efecto la Sentencia dictada por el Tribunal de Apelaciones el 12 de julio de 2010. Corresponde a la Autoridad atender aquellos asuntos que pudieran quedar pendientes dentro del marco de su jurisdicción.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo.  El Juez Presidente señor Hernández Denton disiente con opinión escrita a la que se une la Juez Asociada señora Rodríguez Rodríguez.  La Jueza Asociada señora Fiol Matta disiente sin opinión escrita.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

---

[10]    Véase, además, Berberena v. Echegoyen, 128 D.P.R. 864, 870 n. 2 (1991).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

L.P.C. & D., Inc.

    Recurrida

      v.

Autoridad de Carreteras y           CC-2010-811
Transportación

    Peticionaria

Ferrovial Agroman, S.E.;
y otros

    Partes con interés

Opinión Disidente emitida por el Juez Presidente señor HERNÁNDEZ DENTON a la cual se une la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ.

San Juan, Puerto Rico, a 18 de abril de 2012.

En este caso, este Tribunal resolvió que la Autoridad de Carreteras y Transportación (A.C.T.) no se extralimitó en sus facultades al declarar nulo *ab initio* un contrato otorgado entre esta y L.P.C. & D., Inc. (L.P.C.D.), luego de que se le adjudicara indebidamente una subasta gubernamental. Sin embargo, una mayoría de este Tribunal reconsidera la decisión y resuelve que el caso se tornó académico. Por entender que la controversia ante nos no es académica, disentimos.

I.

En 2008, la A.C.T. celebró una subasta para la construcción de un proyecto llamado "Intersección a

desnivel de las carreteras de P.R. 17 y 181" (AC 0001736). La empresa L.P.C.D. presentó una propuesta, pero no incluyó la cuantía de la fianza provisional exigida en el documento Bid-Bond No. 2008-48. Según el anuncio público de la subasta, incluir dicha cuantía era requisito para la validez de la licitación. La Junta de Subastas le concedió tres días a L.P.C.D. para subsanar este error. Corregida la propuesta, la A.C.T. le adjudicó la subasta a L.P.C.D., por haber sido la licitadora con la propuesta más baja. El Acta de Adjudicación se aprobó el 24 de noviembre de 2008. Acto seguido, el 12 de diciembre de 2008, se otorgó el contrato correspondiente y la A.C.T. le ordenó a L.P.C.D. que iniciara el proyecto dentro de los diez días siguientes.

El 15 de diciembre de 2008, CD Builders, Inc., empresa que presentó la segunda propuesta más baja en la referida subasta, acudió oportunamente ante el Tribunal de Apelaciones para impugnar la adjudicación de la misma. Alegó que, por L.P.C.D. no haber entregado la fianza provisional dentro del término especificado en el aviso de subasta, esta debía ser descalificada como licitadora. El foro apelativo intermedio declaró con lugar una moción en auxilio de jurisdicción y paralizó el proyecto. Para ese momento, L.P.C.D. había realizado "labores misceláneas menores" que incluyeron la instalación del rótulo de identificación del proyecto y de módulos temporeros. Posteriormente, el Tribunal de Apelaciones confirmó la adjudicación de la subasta y dejó sin efecto la paralización de la obra el 10 de febrero de 2009.

El caso llegó ante este Tribunal y ordenamos nuevamente la paralización del proyecto el 24 de febrero de 2009. Durante los catorce días en que estuvo sin efecto la paralización del proyecto, la única actividad realizada por L.P.C.D. fue entregar a la A.C.T. el itinerario de trabajo. Finalmente, resolvimos que la omisión de incluir la fianza constituyó un defecto insubsanable que impedía considerar la propuesta de L.P.C.D. Véase: Aut. Carreteras v. CD Builders, Inc., 177 D.P.R. 398 (2009). Por tanto, ordenamos la descalificación de L.P.C.D. de la subasta. Íd.

A la luz de nuestra decisión, el 20 de noviembre de 2009, la A.C.T. notificó una resolución titulada "Resolución en cumplimiento de orden del Tribunal Supremo" en la que concluyó correctamente que el contrato celebrado con L.P.C.D. había sido suscrito en violación de la ley, por lo que era inexistente o nulo *ab initio.* Asimismo, sostuvo que, al L.P.C.D. suscribir el contrato sin haber advenido final y firme la adjudicación de la subasta, conocía del riesgo de ser descalificado como licitador, por lo que cualquier daño sufrido fue "auto infligido y cualquier gasto desembolsado, a su costo". Además, **la A.C.T. anuló la subasta por recomendación de la Junta de Subastas, debido a la falta de fondos disponibles para las obras de construcción.**

Inconforme, L.P.C.D. presentó una solicitud de reconsideración ante la A.C.T. **Aunque reconoció que esta última tenía facultad para anular subastas,** argumentó que había actuado de forma *ultra vires* al declarar el contrato nulo *ab initio.* Adujo que dicho proceder adjudicó los derechos sustantivos que le asisten a L.P.C.D. como resultado

de los gastos incurridos por esta y la posterior cancelación del contrato. Añadió que correspondía al foro judicial dirimir dicha controversia. La A.C.T. denegó reconsiderar.

Todavía insatisfecha, L.P.C.D. presentó oportunamente un recurso de revisión judicial ante el Tribunal de Apelaciones, el cual revocó la determinación de la A.C.T. Interpretó que, en Aut. Carreteras v. CD Builders, Inc., *supra,* solo facultamos a la A.C.T. a proseguir con el proceso de subasta formal, no a que declarara nulo *ab initio* el contrato suscrito entre las partes. Por ende, sostuvo que la A.C.T. actuó de forma *ultra vires*.

Inconforme, la A.C.T. acudió ante nos. Alegó que el referido contrato era nulo *ab initio,* conforme a lo resuelto por nosotros en Aut. Carreteras v. CD Builders, Inc., *supra,* por lo que la A.C.T. no actuó de forma *ultra vires* al así declararlo.

Así las cosas, le concedimos a L.P.C.D. un término de veinte días para mostrar causa por la cual no debíamos revocar la Sentencia dictada por el Tribunal de Apelaciones. Así lo hizo. En específico, adujo que:

> Es menester señalar que la petición de epígrafe no envuelve de manera alguna el derecho incuestionable que tiene la Autoridad de cancelar en cualquier momento un proceso de subasta y, más aún, de cancelar un contrato de construcción ya otorgado. Así se dispone claramente en su reglamento. El problema que tiene la Autoridad en el caso que nos ocupa es que ésta, además de notificar a las partes licitantes su determinación de cancelar el proceso de licitación, procedió unilateralmente, sin vista alguna, en violación al debido proceso de ley y de forma *ultra vires* a privar de sus derechos a LPCD.

Así pues, especificó que la A.C.T. se extralimitó en sus facultades al haber declarado nulo *ab initio* el contrato en cuestión. Asimismo, nos invitó a adoptar la normativa de la contratación pública federal, la cual explicó en su comparecencia de la siguiente manera:

> La norma es que cuando no hubo una actuación <u>ilegal</u> sino que se trató de una adjudicación impropia, el contrato no es nulo *ab initio.* Se trata de un contrato meramente anulable, cuya terminación obliga a la agencia a compensar los gastos incurridos por el contratista al que se le otorgó el contrato de construcción ahora cuestionado exitosamente en un tribunal por otro licitador. Es por ello que, aún cuando bajo una sentencia judicial declarando la adjudicación como incorrecta, si ya se otorgó el contrato de construcción las agencias federales tienen la discreción y potestad de continuar con el mismo. (Énfasis en el original).

Luego de varios trámites procesales,[11] el 30 de junio de 2011 este Tribunal dictó una Sentencia en la que revocamos la decisión del foro apelativo intermedio y reinstalamos el dictamen emitido por la A.C.T. En primer lugar, determinamos que la controversia era:

---

[11] A.C.T. compareció mediante escrito titulado "Posición de la Autoridad sobre 'Moción para mostrar causa – Regla 46' radicada por LPC&D". Reiteró que la política pública imperante en nuestra jurisdicción en cuanto a contratación entre entidades gubernamentales y privadas impone a los licitadores la carga de asumir las consecuencias que dicho proceso de licitación, negociación y contratación presuponen. Por su parte, L.P.C.D. presentó su "Réplica a posición de la autoridad – Reglas 20 y 31". Luego, la Asociación de Contratistas Generales de Puerto Rico solicitó comparecer como *amicus curiae.* Concedimos su solicitud mediante Resolución. Posteriormente, L.P.C.D. solicitó que tomáramos conocimiento judicial de la Sentencia dictada el 10 de mayo de 2011 por el Tribunal de Apelaciones, en el Caso Núm. KLRA2011-00365, mediante la cual se denegó la solicitud de revisión incoada por CD Builders, Inc, respecto a la adjudicación de una subasta para la construcción del Proyecto de la Segunda Fase de la Ruta 66. A.C.T. se opuso a esto último.

si la Autoridad de Carreteras y Transportación (A.C.T.), mediante resolución, se extralimitó en sus facultades al declarar nulo *ab initio* un contrato entre ésta y L.P.C. & D., Inc. como resultado de un proceso de subasta pública. Esto, apartir de que en <u>Autoridad v. CD Builders</u>, res. el 28 de octubre de 2009, 2009 T.S.P.R. 164, resolvimos que al L.P.C. & D., Inc. no incluir una garantía de proposición aceptable en su propuesta de licitación procedía descalificarla de la referida subasta.

En esta Sentencia, especificamos que los actos ejecutados en contra de la ley son nulos de acuerdo al Art. 4 del Código Civil de Puerto Rico, 4 L.P.R.A. sec. 4. Asimismo, discutimos las normas de contratación gubernamental y recalcamos que todo contrato entre una agencia y una parte privada que no observe las exigencias de la ley es nulo. De igual forma, reiteramos que una parte privada que contrata con el gobierno debe velar por el fiel cumplimiento de las leyes o, en la alternativa, **se arriesga a sufrir pérdidas económicas.** Además, explicamos que aceptar la invitación de L.P.C.D. a considerar el contrato como mero acto anulable tendría como efecto velar por los intereses de la parte privada en la contratación pública y no por los mejores intereses de la agencia ni de los fondos públicos envueltos en este tipo de proceso de subasta, altamente regulado por nuestro ordenamiento. De esta manera, reiteramos que el contrato suscrito entre la agencia y L.P.C.D. fue nulo *ab initio*, según lo resuelto en <u>Aut. Carreteras v. CD Builders, Inc.</u>, *supra*. Por ende, sostuvimos que **la A.C.T. no tiene que sufragar los gastos realizados por L.P.C.D. y que concluir lo contrario iría en contra de la sana administración de fondos públicos.**

Insatisfechas, L.P.C.D. y la Asociación de Contratistas Generales de Puerto Rico (*amicus curiae*) solicitaron conjuntamente que reconsideráramos nuestro dictamen, invocando esencialmente la doctrina de enriquecimiento injusto. Plantearon que, contrario a todo nuestro ordenamiento sobre contratación gubernamental, L.P.C.D. debía ser compensada para evitar el enriquecimiento del Estado a costa de ellos. Posteriormente, el Gobierno de Puerto Rico solicitó intervenir como *amicus curiae* y presentó un escrito de reconsideración señalando los efectos negativos que nuestra Sentencia podría tener sobre la contratación gubernamental en Puerto Rico. Además, al igual que L.P.C.D., argumentó que el contrato en controversia no es nulo, sino anulable. También, alegó que a este caso le aplica la doctrina de enriquecimiento injusto.

**Al día siguiente**, la A.C.T. presentó una "Moción allanándonos a la solicitud para que se considere la sentencia presentada por el Gobierno de Puerto Rico dado el efecto de la misma en el interés público". En su comparecencia de tres páginas, expuso lo siguiente:

> La solicitud del Gobierno de Puerto Rico está fundamentada en el alto interés público y las consecuencias y efectos negativos que la misma tendrá sobre la contratación gubernamental en Puerto Rico. El Gobierno de Puerto Rico, entiende que el resultado de la Sentencia en este caso será, a gran escala, el siguiente: la paralización de las obra de gobierno hasta la obtención de una sentencia final y firme; la dilación en la construcción de las obras y servicios de gobierno; la incertidumbre que generará no poder determinar cuándo se podrá construir una obra proyectada por el gobierno; el aumento en los costos de construcción que resultará en un nuevo riesgo asumido por los contratistas así como el efecto

negativo que este aumento tendrá en las arcas del gobierno.

4. Como resultado de la referida Moción, la Autoridad se allana en la solicitud de reconsideración pues entiende que existe un gran interés público en que las obras del gobierno se lleven a cabo de manera rápida y eficiente. Además, reconoce que una decisión cuyo efecto práctico, a gran escala, sea la paralización o dilación en la ejecución de las obras y la obtención de servicios y el correspondiente aumento en los costos que esto conllevará para el gobierno serían detrimentales para el bienestar del Pueblo de Puerto Rico.

Consideradas las posturas de todas las partes, denegamos reconsiderar.

Todavía inconformes, la parte recurrida L.P.C.D., **la parte peticionaria A.C.T.**, el Gobierno de Puerto Rico y la Asociación de Contratistas presentaron **conjuntamente** una segunda moción de reconsideración. Reiteraron que motivos de alto interés público ameritaban que decretáramos la validez del contrato en cuestión. Así las cosas, ordenamos a todas las partes a que expresaran por qué no se debía dejar sin efecto nuestro dictamen por academicidad, debido a que la Autoridad anuló la subasta en cuestión por falta de fondos públicos para obras de construcción. L.P.C.D., la Asociación de Contratistas y el Gobierno de Puerto Rico comparecieron oponiéndose a que el caso fuera declarado académico.[12] Señalaron que todavía subsiste la controversia sobre si la A.C.T. tiene que pagarle a L.P.C.D. por los trabajos realizados en atención al contrato suscrito entre estas

---

[12] L.P.C.D. y la Asociación de Contratistas presentaron una "Moción en cumplimiento con resolución del 28 de noviembre de 2011". El Gobierno de Puerto Rico compareció mediante "Moción en cumplimiento de orden de 18 de noviembre de 2011".

antes de que la subasta adviniera final y firme, el mismo que fue declarado nulo *ab initio.*

Al atender esta segunda moción de reconsideración, una mayoría de este Tribunal delimita erróneamente la controversia a si el caso se había tornado académico. Así pues, reconsidera nuestra Sentencia de 30 de junio de 2011 y señaló que "todas las partes han comparecido conjuntamente solicitando la concesión del mismo remedio" por lo que el caso perdió el carácter de adversidad. Asimismo, indica que la subasta se había anulado por falta de fondos públicos. Por ende, sostiene que el caso ya no es justiciable. En cuanto a la interrogante sobre si procede que la Autoridad le pague alguna suma de dinero a L.P.C.D., la posición mayoritaria entiende que es una controversia que no es objeto de esta litigación y que, en todo caso, sería objeto de otro pleito. Por ello, no discutió lo relacionado con la contratación gubernamental y la indemnización de daños en casos como el de autos. Finalmente, una mayoría de este Alto Foro deja sin efecto nuestra Sentencia de 30 de junio de 2011 y la Sentencia dictada por el Tribunal de Apelaciones. Además, devolvió el caso a la A.C.T. para que "atienda aquellos asuntos que pudieran quedar pendientes dentro del marco de su jurisdicción".

II.

El principio de justiciabilidad requiere que exista una controversia real en todo caso ante un tribunal. Presidente de la Cámara v. Gobernador, 167 D.P.R. 149, 157 (2006); E.L.A. v. Aguayo, 80 D.P.R. 552, 584 (1958). En lo

pertinente al caso ante nos, hemos reconocido que un caso no es justiciable cuando se ha tornado académico. P.N.P. v. Carrasquillo, 166 D.P.R. 70, 74 (2005); Noriega v. Hernández Colón, 135 D.P.R. 406, 421-422 (1994). Un caso es académico cuando el derecho aplicable o los hechos han variado de manera que ya no existe una controversia vigente entre partes adversas. Íd., pág. 75; Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980). Es decir, un pleito será académico cuando la sentencia que se dicte sobre el mismo no tendrá efectos prácticos para las partes. Cruz v. Adm. De Corrección, 164 D.P.R. 341, 349 (2005); E.L.A. v. Aguayo, *supra.*

De esta manera, se evita usar inadecuadamente los recursos judiciales y establecer precedentes innecesarios. Emp. Pur. Des., Inc. v. H.I.E. Tel., 150 D.P.R. 924 (2000).

Sin embargo, hemos desarrollado cuatro excepciones a esta doctrina de la academicidad: (1) cuando se presenta una controversia recurrente y capaz de evadir la revisión judicial, (2) cuando la situación de hechos ha sido modificada por el demandado pero no tiene visos de permanencia, (3) cuando la controversia se ha tornado académica para el representante de una clase pero no para otros miembros de la clase, y (4) cuando persisten consecuencias colaterales que no se han tornado académicas. P.N.P. v. Carrasquillo, *supra*, pág. 76.

III.

Una mayoría de este Tribunal determina que el caso ante nos se tornó académico, debido a que se anuló la subasta por

falta de fondos públicos y a que A.C.T. se allanó a la posición de L.P.C.D. No estamos de acuerdo.

En primer lugar, debemos señalar que la subasta en controversia se anuló el 20 de noviembre de 2009 mediante la "Resolución en cumplimiento de orden del Tribunal Supremo" emitida por la A.C.T. Esta fue la misma Resolución que declaró nulo *ab initio* el contrato en controversia. Por lo tanto, la subasta se anuló antes de que L.P.C.D presentara infructuosamente su solicitud de reconsideración ante la A.C.T., antes de que acudiera con éxito ante el Tribunal de Apelaciones y antes de que la A.C.T. acudiera ante nos solicitando que revocáramos al foro apelativo intermedio.

En segundo lugar, L.P.C.D. no solicitó que se adjudicara la subasta a su favor en su solicitud de reconsideración ante la A.C.T., ni en su recurso de revisión ante el Tribunal de Apelaciones. En todo momento, L.P.C.D. reconoció la facultad que tenía la A.C.T. para cancelar el contrato en controversia. Lo que L.P.C.D. cuestionó fue la facultad de la A.C.T. para declarar que el contrato es nulo *ab initio.* No cabe duda de que L.P.C.D. simplemente quiere cobrar por una obra para la cual este Tribunal decidió en 2009 que no podía licitar.

Como puede apreciarse, los hechos en el caso ante nos no han variado de forma que ya no exista una controversia vigente entre las partes. Entre L.P.C.D. y A.C.T., sigue vigente la controversia que plantearon desde un principio: si la A.C.T. se extralimitó en sus facultades al declarar nulo *ab initio* el contrato en controversia, a partir de lo

que resolvimos en Autoridad v. CD Builders, *supra*. De concluirse que la A.C.T. no actuó de forma *ultra vires* al declarar el contrato nulo *ab initio,* se convertiría en final y firme la determinación de que la A.C.T. no tiene que indemnizar los gastos incurridos por L.P.C.D. De lo contrario, si concluyéramos que la A.C.T. se extralimitó en sus facultades al hacer dicha determinación, estaríamos reconociendo implícitamente la posibilidad de declarar el contrato como uno meramente anulable, lo cual permitiría que esta agencia gubernamental indemnice los gastos incurridos por L.P.C.D. como parte privada. Ciertamente, este tipo de controversia tiene consecuencias colaterales muy importantes para el erario público. Por ende, es forzoso concluir que el pleito no es académico, aunque ya no se le pueda adjudicar la subasta a L.P.C.D. La controversia siempre ha sido la que ahora el Tribunal quiere dejar para su caso futuro.

Por otro lado, la posición mayoritaria señala en su parte dispositiva que "todas las partes han comparecido conjuntamente solicitando la concesión del mismo remedio". Ello, refiriéndose al hecho de que A.C.T. se allanó a la solicitud de reconsideración de nuestra Sentencia de 30 de junio de 2011, presentada por el Gobierno de Puerto Rico. Por consiguiente, asevera la mayoría, el asunto ha perdido el carácter de adversidad y de intereses jurídicos antagónicos imprescindible para ser justiciable.

No podemos perder de perspectiva que este es un caso sobre contratación gubernamental, en el cual están en juego los fondos públicos del Pueblo de Puerto Rico. Debemos tener

presente que la normativa rigurosa sobre las subastas gubernamentales busca evitar la corrupción, el favoritismo, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos. Perfect Cleaning v. Cardiovascular, 172 D.P.R. 139, 143-144 (2007); A.E.E. v. Maxon, 163 D.P.R. 434, 439 (2004).

Nuestra Sentencia de 30 de junio de 2011 delimitó correctamente la controversia ante nos y resolvió que la A.C.T. no actuó de forma *ultra vires* al declarar nulo *ab initio* el contrato en cuestión. Por consiguiente, dicho dictamen reinstalaba la determinación de la A.C.T. de que esta no venía obligada a resarcir cualquier daño sufrido por la L.P.C.D. a raíz de la cancelación del contrato. De esta manera, se respetaba la norma firmemente arraigada de que **no procede la concesión de remedios en equidad cuando una adjudicación de una subasta se revoca o un contrato se declara nulo por incumplir con los requerimientos estrictos sobre contratación gubernamental**. Véanse: Alco Corporation v. Municipio de Toa Alta, 2011 T.S.P.R. 180, 183 D.P.R. ___ (2011); Perfect Cleaning v. Cardiovascular, *supra,* pág. 148; Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994, 999-1003 (2009); Cordero Vélez v. Mun. Guánica, 170 D.P.R. 237, 245-249 (2007); Las Marías v. Municipio San Juan, 159 D.P.R. 868, 873-877 (2003); Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1010-1012 (1994).

En vista de que una mayoría de este Tribunal dejó sin efecto la referida Sentencia, corresponde a las autoridades llamadas a velar por el buen uso de los fondos públicos el

escrutinio de los procesos llevados a cabo en la subasta en cuestión que, como mínimo, resultan inusuales según el trámite que hemos descrito.

IV.

Por todo lo anterior, entendemos que el caso ante nos no se tornó académico. En consecuencia, no hubiéramos acogido la segunda moción de reconsideración presentada en el caso de autos para dejar sin efecto nuestra Sentencia de 30 de junio de 2011 y nos reafirmamos en lo allí resuelto.


                                    Federico Hernández Denton
                                         Juez Presidente