Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton,
a la cual se une la Juez Asociada Señora Rodríguez Rodríguez.
En este caso, este Tribunal resolvió que la Autoridad de Carreteras y Transportación (A.C.T.) no se extralimitó en sus facultades al declarar nulo ab initio un contrato otor-gado entre esta y L.P.C. & D., Inc. (L.P.C.D.), luego de que se le adjudicara indebidamente una subasta guber-namental. Sin embargo, una mayoría de este Tribunal re-considera la decisión y resuelve que el caso se tornó académico. Por entender que la controversia ante nos no es académica, disentimos.
I
En 2008, la A.C.T. celebró una subasta para la construc-ción de un proyecto llamado Intersección a desnivel de las carreteras de P.R. 17 y 181 (AC 0001736). La empresa L.P.C.D. presentó una propuesta, pero no incluyó la cuan-tía de la fianza provisional exigida en el documento Bid-Bond No. 2008-48. Según el anuncio público de la subasta, incluir dicha cuantía era un requisito para la validez de la licitación. La Junta de Subastas concedió tres días a L.P.C.D. para subsanar este error. Corregida la propuesta, la A.C.T. adjudicó la subasta a L.P.C.D. por haber sido la licitadora con la propuesta más baja. El Acta de Adjudica- *474 ción se aprobó el 24 de noviembre de 2008. Acto seguido, el 12 de diciembre de 2008 se otorgó el contrato correspon-diente y la A.C.T. le ordenó a L.P.C.D. que iniciara el pro-yecto dentro de los diez días siguientes.
El 15 de diciembre de 2008 CD Builders, Inc., empresa que presentó la segunda propuesta más baja en la referida subasta, acudió oportunamente al Tribunal de Apelaciones para impugnar la adjudicación de esta. Alegó que, por L.P.C.D. no haber entregado la fianza provisional dentro del término especificado en el aviso de subasta, esta debía ser descalificada como licitadora. El foro apelativo inter-medio declaró con lugar una moción en auxilio de jurisdic-ción y paralizó el proyecto. Para ese momento, L.P.C.D. había realizado labores misceláneas menores que incluye-ron la instalación del rótulo de identificación del proyecto y de módulos temporeros. Posteriormente, el Tribunal de Apelaciones confirmó la adjudicación de la subasta y dejó sin efecto la paralización de la obra el 10 de febrero de 2009.
El caso llegó a este Tribunal y ordenamos nuevamente la paralización del proyecto el 24 de febrero de 2009. Du-rante los catorce días en que estuvo sin efecto la paraliza-ción del proyecto, la única actividad realizada por L.P.C.D. fue entregar a la A.C.T. el itinerario de trabajo. Final-mente, resolvimos que la omisión de incluir la fianza constituyó un defecto insubsanable que impedía considerar la propuesta de L.P.C.D. Véase Aut. Carreteras v. CD Builders, Inc., 177 D.P.R. 398 (2009). Por lo tanto, ordenamos la descalificación de L.P.C.D. de la subasta. Id.
A la luz de nuestra decisión, el 20 de noviembre de 2009 la A.C.T. notificó una resolución titulada Resolución en cumplimiento de orden del Tribunal Supremo, en la que concluyó correctamente que el contrato celebrado con L.P.C.D. había sido suscrito en violación de la ley, por lo que era inexistente o nulo ab initio. Asimismo, sostuvo que L.P.C.D. conocía del riesgo de ser descalificado como licita- *475 dor cuando suscribió el contrato sin haber advenido final y firme la adjudicación de la subasta, por lo que cualquier daño sufrido fue “auto infligido [sic] y cualquier gasto des-embolsado, a su costo”. Apéndice de la Solicitud para la expedición de auto de certiorari, pág. 62. Además, laA.C.T. anuló la subasta por recomendación de la Junta de Subas-tas, debido a la falta de fondos disponibles para las obras de construcción.
Inconforme, L.P.C.D. presentó una solicitud de reconsi-deración ante la A.C.T. Aunque reconoció que esta última tenía facultad para anular las subastas, argumentó que había actuado de forma ultra vires al declarar el contrato nulo ab initio. Adujo que dicho proceder adjudicó los derechos sustantivos que le asisten a L.P.C.D. como resultado de los gastos en que esta incurrió y la posterior cancelación del contrato. Añadió que correspondía al foro judicial diri-mir la controversia. La A.C.T. se negó a reconsiderar.
Todavía insatisfecha, L.P.C.D. presentó oportunamente un recurso de revisión judicial ante el Tribunal de Apelaciones, el cual revocó la determinación de la A.C.T. Interpretó que, en Aut. Carreteras v. CD Builders, Inc., supra, solo facultamos a la A.C.T. a proseguir con el proceso de subasta formal, no a que declarara nulo ab initio el contrato suscrito entre las partes. Por ende, sostuvo que la A.C.T. actuó de forma ultra vires.
Inconforme, laA.C.T. acudió ante nos. Alegó que el refe-rido contrato era nulo ab initio conforme resolvimos en Aut. Carreteras v. CD Builders, Inc., supra, por lo que la A.C.T. no actuó de forma ultra vires al así declararlo.
Así las cosas, concedimos a L.P.C.D. un término de veinte días para mostrar causa por la cual no debíamos revocar la Sentencia dictada por el Tribunal de Apelaciones. Así lo hizo. En específico, adujo que:
Es menester señalar que la petición de epígrafe no envuelve de manera alguna el derecho incuestionable que tiene la Au-toridad de cancelar en cualquier momento un proceso de su- *476 basta y, más aún, de cancelar un contrato de construcción ya otorgado. Así se dispone claramente en su reglamento. El pro-blema que tiene la Autoridad en el caso que nos ocupa es que ésta, además de notificar a las partes licitantes su determina-ción de cancelar el proceso de licitación, procedió unilateral-mente, sin vista alguna, en violación al debido proceso de ley y de forma ultra vires a privar de sus derechos a LPCD. Moción para mostrar causa — Regla 46, pág. 5.
Así pues, especificó que la A.C.T. se extralimitó en sus facultades al haber declarado nulo ab initio el contrato en cuestión. Asimismo, nos invitó a adoptar la normativa de la contratación pública federal, la cual explicó en su com-parecencia de la manera siguiente:
La norma es que cuando no hubo una actuación ilegal sino que se trató de una adjudicación impropia, el contrato no es nulo ab initio. Se trata de un contrato meramente anulable, cuya terminación obliga a la agencia a compensar los gastos incu-rridos por el contratista al que se le otorgó el contrato de cons-trucción ahora cuestionado exitosamente en un tribunal por otro licitador. Es por ello que, a[u]n bajo una sentencia judicial declarando la adjudicación como incorrecta, si ya se otorgó el contrato de construcción las agencias federales tienen la dis-creción y potestad de continuar con el mismo. (Énfasis en el original). Id., pág. 6.
Luego de varios trámites procesales,([1]) el 30 de junio de 2011 este Tribunal dictó una Sentencia en la que revoca-mos la decisión del foro apelativo intermedio y reinstala- *477 mos el dictamen emitido por la A.C.T. En primer lugar, determinamos que la controversia era
... si la Autoridad de Carreteras y Transportación (A.C.T.), mediante resolución, se extralimitó en sus facultades al decla-rar nulo ab initio un contrato entre ésta y L.P.C. & D., Inc. como resultado de un proceso de subasta pública. Esto, a par-tir de que en Autoridad v. CD Builders, res. el 28 de octubre de 2009, 2009 T.S.P.R. 164, resolvimos que al L.P.C. & D., Inc. no incluir una garantía de proposición aceptable en su propuesta de licitación procedía descalificarla de la referida subasta.
En esta Sentencia, especificamos que los actos ejecuta-dos contra la ley son nulos de acuerdo con el Art. 4 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4. Asimismo, discutimos las normas de contratación gubernamental y recalcamos que es nulo todo contrato entre una agencia y una parte privada que no observe las exigencias de la ley. De igual forma, reiteramos que una parte privada que con-trata con el gobierno debe velar por el fiel cumplimiento de las leyes o, en la alternativa, se arriesga a sufrir pérdidas económicas. Explicamos también que aceptar la invitación de L.P.C.D. a considerar el contrato como un mero acto anulable tendría como efecto velar por los intereses de la parte privada en la contratación pública y no por los mejo-res intereses de la agencia ni de los fondos públicos impli-cados en este tipo de proceso de subasta, altamente regu-lado por nuestro ordenamiento. De esta manera, reiteramos que el contrato suscrito entre la agencia y L.P.C.D. fue nulo ab initio, según lo resuelto en Aut. Carre-teras v. CD Builders, Inc., supra. Por ende, sostuvimos que la A.C.T. no tiene que sufragar los gastos realizados por L.P.C.D. y que concluir lo contrario iría contra la sana ad-ministración de fondos públicos.
Insatisfechas, L.P.C.D. y la Asociación de Contratistas Generales de Puerto Rico (amicus curiae) solicitaron con-juntamente que reconsideráramos nuestro dictamen, invo-cando esencialmente la doctrina de enriquecimiento injusto. Plantearon que, contrario a todo nuestro ordena- *478 miento sobre contratación gubernamental, L.P.C.D. debía ser compensada para evitar el enriquecimiento del Estado a costa de ellos. Posteriormente, el Gobierno de Puerto Rico solicitó intervenir como amicus curiae y presentó un escrito de reconsideración, señalando los efectos negativos que nuestra Sentencia podría tener sobre la contratación gubernamental en Puerto Rico. Además, al igual que L.P.C.D., argumentó que el contrato en controversia no es nulo, sino anulable. También, alegó que a este caso le aplica la doctrina de enriquecimiento injusto.
Al día siguiente, la A.C.T. presentó una “Moción alla-nándonos a la solicitud para que se considere la sentencia presentada por el Gobierno de Puerto Rico dado el efecto de la misma en el interés público”. En su comparecencia de tres páginas, expuso lo siguiente:
3. ... La solicitud de reconsideración del Gobierno de Puerto Rico está fundamentada en el alto interés público y las conse-cuencias y efectos negativos que la misma tendrá sobre la con-tratación gubernamental en Puerto Rico. El Gobierno de Puerto Rico, entiende que el resultado de la Sentencia en este caso será, a gran escala, el siguiente: la paralización de las obras de gobierno hasta la obtención de una sentencia final y firme; la dilación en la construcción de las obras y servicios de gobierno; la incertidumbre que generará no poder determinar cuándo se podrá construir una obra proyectada por el go-bierno; el aumento en los costos de construcción que resultará en un nuevo riesgo asumido por los contratistas así como el efecto negativo que este aumento tendrá en las arcas del gobierno.
4. Como resultado de la referida Moción[,] la Autoridad se allana a la solicitud de reconsideración pues entiende que existe un gran interés público en que las obras del gobierno se lleven a cabo de manera rápida y eficiente. Además, reconoce que una decisión cuyo efecto práctico, a gran escala, sea la paralización o dilación en la ejecución de las obras y la obten-ción de servicios y el correspondiente aumento en los costos que esto conllevará para el gobierno serían detrimentales para el bienestar del Pueblo de Puerto Rico.
Consideradas las posturas de todas las partes, denega-mos reconsiderar.
*479 Todavía inconformes, la parte recurrida L.P.C.D., la parte peticionaria A.C.T., el Gobierno de Puerto Rico y la Asociación de Contratistas Generales de Puerto Rico pre-sentaron conjuntamente una segunda moción de reconsideración. Reiteraron que motivos de alto interés pú-blico ameritaban que decretáramos la validez del contrato en cuestión. Así las cosas, ordenamos a todas las partes a que expresaran por qué no se debía dejar sin efecto nuestro dictamen por academicidad, debido a que la A.C.T. anuló la subasta en cuestión por falta de fondos públicos para las obras de construcción. L.P.C.D., la Asociación de Contratis-tas Generales de Puerto Rico y el Gobierno de Puerto Rico comparecieron oponiéndose a que el caso fuera declarado académico.([2]) Señalaron que todavía subsiste la controver-sia sobre si la A.C.T. tiene que pagar a L.P.C.D. por los trabajos realizados según el contrato suscrito entre estas antes de que la subasta adviniera final y firme, contrato que fue declarado nulo ab initio.
Al atender esta segunda moción de reconsideración, una mayoría de este Tribunal delimita erróneamente la contro-versia a si el caso se había tornado académico. Así pues, reconsidera nuestra Sentencia de 30 de junio de 2011 y señaló que “todas las partes han comparecido conjunta-mente solicitando la concesión del mismo remedio”, por lo que el caso perdió el carácter litigioso. Sentencia (en recon-sideración), págs. 11-12. Asimismo, indica que la subasta se había anulado por falta de fondos públicos. Por ende, sostiene que el caso ya no es justiciable. En cuanto a la interrogante sobre si procede que la Autoridad pague a L.P.C.D. alguna suma de dinero, la posición mayoritaria entiende que es una controversia que no es objeto de esta litigación y que, en todo caso, sería objeto de otro pleito. Por ello, no discutió lo relacionado con la contratación gu- *480 bernamental y la indemnización de daños en casos como el de autos. Finalmente, una mayoría de este Alto Foro deja sin efecto nuestra Sentencia de 30 de junio de 2011 y la Sentencia dictada por el Tribunal de Apelaciones. Además, devolvió el caso a la A.C.T. para que atienda aquellos asun-tos que pudieran quedar pendientes dentro del marco de su jurisdicción.
II
El principio de justiciabilidad requiere que exista una controversia real en todo caso ante un tribunal. Presidente de la Cámara v. Gobernador, 167 D.P.R. 149, 157 (2006); E.L.A. v. Aguayo, 80 D.P.R. 552, 584 (1958). En lo pertinente al caso ante nos, hemos reconocido que un caso no es justiciable cuando se ha tornado académico. P.N.P. v. Carrasquilla, 166 D.P.R. 70, 74 (2005); Noriega v. Hernández Colón, 135 D.P.R. 406, 421-422 (1994). Un caso es académico cuando el derecho aplicable o los hechos han variado de tal manera que ya no existe una controversia vigente entre las partes adversas. P.N.P. v. Carrasquillo, supra, pág. 75; Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980). Es decir, un pleito será académico cuando la sentencia que se dicte en él no tendrá efectos prácticos para las partes. Cruz v. Administración, 164 D.P.R. 341, 349 (2005); E.L.A. v. Aguayo, supra. De esta manera, se evita usar inadecuadamente los recursos judiciales y esta-blecer precedentes innecesarios. Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 D.P.R. 924 (2000).
Sin embargo, hemos desarrollado cuatro excepciones a esta doctrina de la academicidad, por lo que no aplicará: (1) cuando se presenta una controversia recurrente y capaz de evadir la revisión judicial, (2) cuando la situación de he-chos ha sido modificada por el demandado pero no tiene visos de permanencia, (3) cuando la controversia se ha tornado académica para el representante de una clase pero no *481 para otros miembros de la clase, y (4) cuando persisten consecuencias colaterales que no se han tornado académicas. P.N.P. v. Carrasquillo, supra, pág. 76.
III
Una mayoría de este Tribunal determina que el caso ante nos se tornó académico debido a que se anuló la su-basta por falta de fondos públicos y a que A.C.T. se allanó a la posición de L.P.C.D. No estamos de acuerdo.
En primer lugar, debemos señalar que la subasta en controversia se anuló el 20 de noviembre de 2009 mediante la Resolución en cumplimiento de orden del Tribunal Supremo emitida por la A.C.T. Esta fue la misma Resolución que declaró nulo ab initio el contrato en controversia. Por lo tanto, la subasta se anuló antes de que L.P.C.D presen-tara infructuosamente su solicitud de reconsideración ante la A.C.T., antes de que acudiera con éxito al Tribunal de Apelaciones y antes de que la A.C.T. acudiera ante nos so-licitando que revocáramos al foro apelativo intermedio.
En segundo lugar, L.P.C.D. no solicitó que se adjudicara la subasta a su favor en su solicitud de reconsideración ante la A.C.T. ni en su recurso de revisión ante el Tribunal de Apelaciones. En todo momento, L.P.C.D. reconoció la fa-cultad que tenía la A.C.T. para cancelar el contrato en controversia. Lo que L.P.C.D. cuestionó fue la facultad de la A.C.T. para declarar que el contrato es nulo ab initio. No cabe duda de que L.P.C.D. simplemente quiere cobrar por una obra para la cual este Tribunal decidió en 2009 que no podía licitar.
Como puede apreciarse, los hechos en el caso ante nos no han variado de forma que ya no exista una controversia vigente entre las partes. Entre L.P.C.D. y A.C.T. sigue vi-gente la controversia que plantearon desde un principio: si la A.C.T. se extralimitó en sus facultades al declarar nulo ab initio el contrato en controversia, a partir de lo que re- *482 solvimos en Aut. Carreteras v. CD Builders, Inc., supra. De concluirse que la A.C.T. no actuó de forma ultra vires al declarar el contrato nulo ab initio, se convertiría en final y firme la determinación de que la A.C.T. no tiene que in-demnizar los gastos en que incurrió L.P.C.D. De lo contra-rio, si concluyéramos que la A.C.T. se extralimitó en sus facultades al hacer dicha determinación, estaríamos reco-nociendo implícitamente la posibilidad de declarar el con-trato como meramente anulable, lo cual permitiría que esta agencia gubernamental indemnice los gastos en que incurrió L.P.C.D. como parte privada. Ciertamente, este tipo de controversia tiene consecuencias colaterales muy importantes para el erario. Por ende, es forzoso concluir que el pleito no es académico, aunque ya no se le pueda adjudicar la subasta a L.P.C.D. La controversia siempre ha sido la que ahora el Tribunal quiere dejar para su “caso futuro”.
Por otro lado, la posición mayoritaria señala en su parte dispositiva que “todas las partes han comparecido conjun-tamente solicitando la concesión del mismo remedio”. Ello, refiriéndose al hecho de que A.C.T. se allanó a la solicitud de reconsideración de nuestra Sentencia de 30 de junio de 2011, presentada por el Gobierno de Puerto Rico. Por con-siguiente, asevera la mayoría, el asunto ha perdido el ca-rácter de adversidad y de intereses jurídicos antagónicos imprescindible para ser justiciable.
No podemos perder de perspectiva que este es un caso sobre contratación gubernamental, en el cual están en juego los fondos públicos del Pueblo de Puerto Rico. Debe-mos tener presente que la normativa rigurosa sobre las subastas gubernamentales busca evitar la corrupción, el favoritismo, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos. Perfect Cleaning v. Cardiovascular, 172 D.P.R. 139, 143-144 (2007); A.E.E. v. Maxon, 163 D.P.R. 434, 439 (2004).
*483 Nuestra Sentencia de 30 de junio de 2011 delimitó co-rrectamente la controversia ante nos y resolvió que la A.C.T. no actuó de forma ultra vires al declarar nulo ab initio el contrato en cuestión. Por consiguiente, dicho dic-tamen reinstalaba la determinación de la A.C.T. de que esta no estaba obligada a resarcir cualquier daño sufrido por la L.P.C.D. a raíz de la cancelación del contrato. De esta manera, se respetaba la norma firmemente arraigada de que no procede la concesión de remedios en equidad cuando una adjudicación de una subasta se revoca o un contrato se declara nulo por incumplir con los requerimien-tos estrictos sobre contratación gubernamental. Véanse: ALCO Corp. v. Mun. de Toa Alta, 183 D.P.R. 530 (2011); Perfect Cleaning v. Cardiovascular, supra, pág. 148; Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994, 999-1003 (2009); Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237, 245-249 (2007); Las Marías v. Municipio San Juan, 159 D.P.R. 868, 873 — 877 (2003); Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1010-1012 (1994).
En vista de que una mayoría de este Tribunal dejó sin efecto la referida Sentencia, corresponde a las autoridades llamadas a velar por el buen uso de los fondos públicos el escrutinio de los procesos llevados a cabo en la subasta en cuestión que, como mínimo, resultan inusuales según el trámite que hemos descrito.
IV
Por todo lo anterior, entendemos que el caso ante nos no se tornó académico. En consecuencia, no hubiéramos aco-gido la segunda moción de reconsideración presentada en el caso de autos para dejar sin efecto nuestra Sentencia de 30 de junio de 2011, y nos reafirmamos en lo allí resuelto.

(1) La Autoridad de Carreteras y Transportación (A.C.T.) compareció mediante un escrito titulado Posición de la Autoridad sobre “Moción para mostrar causa-Regla 46” Radicada por LPC & D. Reiteró que la política pública imperante en nuestra jurisdicción en cuanto a la contratación entre entidades gubernamentales y privadas impone a los licitadores la carga de asumir las consecuencias que dicho proceso de licitación, negociación y contratación presuponen. Por su parte, L.P.C. & D., Inc. (L.P.C.D.) presentó su Réplica a Posición de la Autoridad — Reglas 20 y 31. Luego, la Asociación de Contratistas Generales de Puerto Rico solicitó comparecer como amicus curias. Concedimos su solicitud mediante Resolución. Posteriormente, L.P.C.D. solicitó que tomáramos conocimiento judicial de la Sentencia dictada el 10 de mayo de 2011 por el Tribunal de Apelaciones, en el Caso Núm. KLRA2011-00365, mediante la cual se denegó la solicitud de revisión incoada por CD Builders, Inc. respecto a la adjudicación de una subasta para la construcción del Proyecto de la Segunda Fase de la Ruta 66. A.C.T. se opuso a esto último.

(2) L.P.C.D. y la Asociación de Contratistas Generales de Puerto Rico presentaron una “Moción en cumplimiento con resolución del 28 de noviembre de 2011”. El Gobierno de Puerto Rico compareció mediante “Moción en cumplimiento de orden de 18 de noviembre de 2011”.